55  307
53a 409

# JOHN FITCH

*v.*

# JOHN BOYD *et al.*

1. FORFEITURE OF CONTRACT—*in what manner accomplished.* A party who held an equitable title to land, under a contract of purchase, entered into an agreement to assign that contract to a third person, upon the payment of a certain sum of money, " to be paid in ninety days, with interest, otherwise all his right to said article of agreement shall be forfeited:" *Held,* the failure to pay the money within the time stipulated would, of itself, work a forfeiture of such second contract. But if anything were necessary to be done by the vendor in the second contract to produce a forfeiture, his subsequent sale of the premises to another would be sufficient.

2. SAME—*placing the vendee in statu quo.* The rule which requires a vendor to surrender negotiable notes given for the purchase money, before he can declare a forfeiture of the contract for want of prompt payment, does not apply in a case where such notes are over due, and still in the hands of the vendor, because, in such case, an assignee of the notes would take them subject to the defense which would arise to the maker by reason of the forfeiture.

3. LACHES—*specific performance.* A purchaser of a contract for the conveyance of land, paid cash in hand, $100, and gave his note for the residue of the purchase price, $362.56, payable within ninety days, time being made of the essence of the contract. The money was not paid, and after a delay of thirteen years, during eleven years of which the vendee gave no attention to the property, he sought to enforce a specific performance. The relief was refused on the ground of *laches,* independently of the fact that the contract had become forfeited by its own terms, and the rights of third persons had intervened.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. HITCHCOCK, DUPEE & EVARTS, for the appellant.

Mr. GEORGE F. BAILEY, for the appellee, Boyd.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by appellant, in the circuit court of Cook county, against appellees, to enforce the specific performance of a contract. It appears that on the fourth day of October, 1853, Samuel Ellis sold to one John Johnston three lots in Ellis' addition to Chicago, of which the lot in controversy was a part. A separate agreement was given, and the terms were one-fourth cash, and the balance in one, two and three years, time being expressly declared to be of the essence of the contract, and in each agreement it was provided, that the vendor might declare a forfeiture in case of a failure to promptly meet the payments, and that the purchaser should pay the taxes on the property.

On the tenth of March, 1854, Johnston entered into an agreement with H. H. Beardsley to transfer to him, on his prompt payment of $362.56, within ninety days, his contract with Ellis for the purchase of the lot in controversy. This agreement recited the payment of $100, and a note for $362.56, the balance, was given. The agreement provided, that if Beardsley failed to pay the note at maturity, the contract, and the $100 already paid, should be absolutely forfeited. It seems that Beardsley made no further payments to Johnston, paid no taxes, and paid nothing to Ellis on the consideration of Johnston's purchase. He seems not to have done anything indicating that he was controlling the property, or claiming any interest in it, except while building a house on an adjoining lot, he piled some lumber on it, and afterwards some wood. But in December, 1856, near three years after he entered into the contract, and after Johnston had assigned the agreement with Ellis to Carpenter, and after the purchase money on the lot had been paid to Ellis, he, through Peck, tendered the money to Ogden, Fleetwood & Co., Ellis' agents, which, as nothing was due on that contract, was refused.

It seems that when the purchase money was paid to Ellis by Johnston, or his assignees, Ogden, as the attorney on the part

of the heirs of Ellis, conveyed the premises to appellee, on the eleventh day of December, 1856, which deed was then acknowledged and subsequently recorded. The heirs of Ellis had executed a deed of conveyance for a number of tracts of land, of which the lot was a part, to Aristarchus Bulkley, on the fifteenth day of January, 1856. He conveyed the lot in controversy to Robert H. Bulkley, on the third day of March, 1866, and he, on the thirtieth of October, 1866, conveyed the premises to appellee. On a hearing in the court below, the bill was dismissed, and an appeal perfected, and the record is brought to this court and errors are assigned.

It is urged by appellant, that Beardsley held an equity in the title by his agreement with Johnston, and that it being on record, all subsequent purchasers from Johnston, or his assigns, took with notice, and subject to his equity. On the other hand, it is contended that Beardsley, by the terms of his contract, forfeited all right to the property by failing to make payment at the stipulated time. We think the Beardsley contract was forfeited by non-payment, and the subsequent acts of Johnston. The money was not paid according to the terms of the contract, which declared that such a failure should produce an absolute forfeiture. But if anything more was required, Johnston did all that was necessary to produce a forfeiture, by again selling the property. *Chrisman* v. *Miller*, 21 Ill. 227. But it is urged, that according to the rule announced in the cases of *Staley* v. *Murphy*, 47 Ill. 241, and *Murphy* v. *Lockwood*, 21 Ill. 615, Johnston was not in a position to enforce a forfeiture, or, at any rate, did not and could not, without returning to Beardsley his note given for the purchase money, and restoring the purchase money received.

In the case of *Staley* v. *Murphy*, *supra*, it was held, that the vendor could not declare such a forfeiture, while he retained, or left outstanding, the notes given on the purchase which had not matured; and the reason is, that they are subject to assignment, so as to compel the purchaser to pay them, notwithstanding a forfeiture might be declared; that it would be unjust to

permit the vendor to reclaim the land, and negotiate the notes still to mature, or even to permit him to retain such a power, and hence, in such a case, such securities must be returned to the vendee before the forfeiture can be made. But this case does not present that question, as the note was over due when Johnston transferred his contract with Ellis to the subsequent purchaser. In the case of *Murphy* v. *Lockwood,* time was not made of the essence of the contract, and the vendor had received a payment, and did other acts, long after the time for the last payment had expired, recognizing the continuance of the contract. In that contract, there was no provision that the vendor might declare a forfeiture. That case is entirely dissimilar to the case at bar in its essential elements.

Again, there can hardly be a doubt that Beardsley regarded the contract at an end. He did not pay the purchase money at the time it matured, and did not subsequently offer to pay it to any one who was entitled to receive it, and it seems he refused to pay it when the note was presented to him by Johnston's son, after his father's death. He did not pay taxes that were assessed against the property. He remained inactive, and apparently perfectly indifferent to the matter, for many years. After waiting for nearly thirteen years after he should have paid the purchase money, leaving others, who he must have known claimed to own the lot, to pay the taxes, and bear other burdens incident to the ownership, and, perhaps, to improve the premises, which had doubtless, in that length of time, greatly increased in value, and he, during about eleven years of that time, asserted no claim. Inasmuch as equity always exercises a discretion whether it will enforce a contract specifically, even if the contract between Johnston and Beardsley had not been rescinded, a court of equity would not, after such *laches,* enforce this agreement in favor of Beardsley, had he not made a transfer to appellant. To do so would work great hardship and wrong, if not positive injustice, upon those who have acquired rights, and expended their money. After such a delay, to say nothing

of the almost conclusive presumption, that Beardsley had abandoned the contract, a court of equity would not have afforded Beardsley relief. As appellant was dealing with an equity, he took it subject to all equities, and can, therefore, only occupy the position that his grantor did when he purchased. His claim, under the circumstances of the case, does not, and can not, commend itself to a more favorable consideration than would that of his vendor, had he asked for its enforcement. We perceive no error in the record, and the decree of the circuit court must be affirmed.

*Decree affirmed.*