PENSACOLA FINANCE COMPANY, A CORPORATION, *Plaintiff in Error*, v. R. B. SIMPSON, *Defendant in Error*.

Opinion Filed November 9, 1921.

Petition for Rehearing Denied December 17, 1921.

Where the owner of real estate engages an agent, as well as other agents, to obtain a purchaser therefor at a stated price net to the seller, the agent to be paid a commission for obtaining and producing a purchaser, and the agent obtains and sends a prospective purchaser to the seller, who, without knowledge or notice that such prospective purchaser was obtained and sent to him by the agent, but supposing the proposed purchaser had come direct without the intervention of an agent, made a price to the purchaser that did not include an agent's commission. Subsequently the seller was advised

that the proposed purchaser had been obtained and sent to the seller by the agent who claimed a commission for such services, whereupon the seller withdrew his offer made direct to the proposed purchaser and then afterwards by a new transaction sold at the same price to the same person with full knowledge of the agent's services in obtaining the purchaser and of his claim for commissions, *Held*, that the agent was entitled to his commissions and the essential facts being established a directed verdict for the agent was not error.

A Writ of Error to the Court of Record for Escambia County; C. Moreno Jones, Judge.

Judgment affirmed.

*R. Pope Reese*, for Plaintiff in Error;

*Watson & Pasco*, for Defendant in Error.

WHITFIELD, J.—The declaration herein by R. B. Simpson alleges that the defendant company employed Simpson "to obtain a purchaser" for described real estate at a price acceptable to defendant; that Simpson produced to defendant as a purchaser one Russell who purchased the property for $3,000.00, by reason thereof Simpson claims a commission on such sale, a second count was for work done and services performed. To the first count the defendant pleaded a denial that Simpson produced Russell to defendant as a purchaser of the property. A denial of indebtedness was plead to the second count. At the trial, judgment on a directed verdict for the plaintiff was rendered and defendant took writ of error.

It appears that the president of the defendant company had asked the plaintiff, a real estate sales agent, as also

other such agents, to sell the property, at about $3,000.00 net; that Simpson procured Russell as a prospective purchaser and sent him to Knowles the president of the defendant company, who, not then knowing Simpson had sent Russell to him as a prospective purchaser of the property, and thinking he was making an offer direct to Russell without the intervention of a sales agent, offered to sell the property to Russell for $3,000.00. Subsequently the officers of the defendant company were notified that Simpson had procured Russell as a purchaser and claimed a commission of $150.00. On August 30, 1919, Knowles as president of the defendant company wrote Simpson that in view of his claiming a commission the company was "writing Mr. Russell withdrawing our offer, because under no circumstances have we offered the property for less than $3,000.00 net to us, and even at that price we have decided to withdraw." On September 1st, 1919, the defendant company conveyed the property to Russell for $3,000.00, the president of the company testifying that he told Russell: "Simpson claims a commission as a broker—you will have to indemnify me if I have to pay him a commission on the sale." He also testified that he did not "recognize Mr. Simpson's claim at any time to his commission."

When Russell the purchaser obtained from Knowles a price of $3,000.00 for the property, Knowles did not know Simpson had been instrumental in securing Russell as a prospective purchaser, and consequently Simpson may not then have *produced* a purchaser as alleged in the declaration. But when the offer to Russell was withdrawn by the defendant and subsequently a sale was made to Russell for the same price, $3,000.00, such sale as a new transaction was made with full knowledge of the services and claims by Simpson, and of course the sale was made subject to

Simpson's claim for commissions as compensation for such services. The new transaction could have made the selling price include the amount of the commission, but whether it did or not, the defendant is liable therefor, Simpson's services in procuring and producing a purchaser having been rendered, and notice thereof and of his claim for compensation therefor, having been given to the defendant company when the new transaction and sale occurred.

As these essential facts are established and the amount of the commission, if any is due, having been agreed on, there was no error in directing a verdict for the plaintiff and in entering judgment thereon.

. Affirmed.

Browne, C. J., and Taylor, J., concur.

Ellis and West, J. J., specially concur.

Ellis, J., Concurring—The issue upon which this case was tried was made very narrow by the parties. The only question presented was whether plaintiff presented Russell as a purchaser. The defendant's plea admitted the other allegations of the declaration, viz: that defendant employed plaintiff to obtain a purchaser for the land described, at a price acceptable to defendant.

That the plaintiff obtained a purchaser, that his name was Russell, and that the latter purchased at a price acceptable to defendant is shown by evidence which is uncontradicted. The defendant seeks to avoid the obligation by stating that it did not know when Russell came to its president, Knowles, that plaintiff had sent him, consequently

in naming a price to Russell defendant did not include plaintiff's commission but named a price that would not have been satisfactory if it had known that plaintiff claimed a commission. But the fact remains that the sale was not made to Russell for that price until the defendant was fully advised that plaintiff had obtained Russell as a purchaser and expected to receive the commission. The defendant withdrew the offer it made to Russell it is true but it afterwards availed itself of the plaintiff's activities in interesting Russell and securing him as a purchaser and sold to Russell at the price originally named in full knowl- edge that the plaintiff had produced him and was claiming a commission on the sale to Russell.

That Russell was able and willing to buy upon the terms and at a price satisfactory to defendant is shown beyond possibility of controversy by the fact that he did buy the land after the defendant knew that the plaintiff had by his activities obtained Russell as a purchaser, interested him in the property and was claiming a commission on any sale of the property made to him. The case at bar is not analogous to Wiggins v. Wilson, 55 Fla. 346, 45 South. Rep. 1011, where the *customer* produced by the agent "broke off the negotiations" and afterwards purchased at a smaller price. The contract in that case provided that the agent should "close a sale of the lands at the price and upon the terms particularly specified therein." There was no such agreement in this case and no such issue. In draw- ing a distinction between a broker employed to sell and one employed to find a purchaser the court quoted from a text found in 19 Cyc. 255 as follows: "Generally if a broker has brought the parties together and as a result they con- clude a contract, he is not deprived of his right to a com- mission by the fact that the contract so concluded differs in

terms from the one which he was authorized to negotiate.''
In the case at bar there was no question of terms, no such
issue was presented. The only issue was: Did the plain-
tiff find Russell and produce him to the defendant; be-
cause the pleadings admit that the defendant sold the
property to Russell at a price satisfactory to defendant.
The evidence shows that the sale was made by the defend-
ant knowing that the plaintiff was claiming a commission
on any sale that might be made to Russell upon the ground
that the plaintiff had found him and produced him to
defendant. According to the evidence the production of
the customer occured in the following manner. It is ad-
mitted by the pleadings that the plaintiff had been engaged
to find a purchaser for the land at a price satisfactory to
defendant. The plaintiff found Russell, interested him in
the land, told him *about* what price he would have to pay,
and told him who owned the land. Russell and plaintiff
were sitting in the latter's office, Knowles, the president of
defendant company was in an automobile across the street,
he was preparing to leave town. The plaintiff said to Rus-
sell, there is Mr. Knowles, he is leaving town, go over and
see him at once. Russell did it. Spoke to Mr. Knowles
about the property, obtained the latter's price, $3,000 and
Mr. Knowles left. The plaintiff, immediately called upon
the latter's son, who was an officer of the company, told
him that he had found Russell, sent him to Mr. Knowles
and if a sale was made would expect to be paid his com-
mission. This information was conveyed to Mr. Knowles,
who upon his return ''broke off the negotiations with
Russell'' and later sold to him at the original price fixed.

The plaintiff did not accompany Mr. Russell across the
street and introduce him to Mr. Knowles, nor did he put
into Russell's hand a letter of introduction nor did he send
his business card. Indeed it was unnecessary, while that

method would have advised Mr. Knowles at that time that plaintiff had brought them together, nevertheless, he was fully advised of that fact before a trade was made with Russell for the land. Besides no such issue was involved. Now will the law permit the defendant to avoid it's legal obligation to Simpson by the rather equivocal expedient of technically breaking off the negotiations, withdrawing the offer, to eliminate the plaintiff, and then avail itself of the activities of the plaintiff by selling to Russell at the original price proposed.

The case of Cumberland Savings & Trust Co. v. McGriff, 61 Fla. 159, 54 South. Rep. 265, is complete authority for the verdict in this case. McGriff found the *prospective* purchaser, McDaniel, brought him and Lutterloh together, a price was fixed and rejected by McDaniel, another price was named by Lutterloh, $1,000 less. That price was accepted, the agreement was cancelled and later Lutterloh's brother sold to McDaniel and Phillips for $500 less than the last price to McDaniel. A verdict for McGriff, the broker was sustained because he continued his efforts to keep McDaniel interested. In the case of bar Mr. Knowles, representing the company, required Russell to promise that he would indemnify Knowles or the company against any commission that it would have to pay to Mr. Simpson, the plaintiff, on account of the sale. In the Lutterloh case, McDaniel, the person whom McGriff had interested declined to purchase the property at the price named at first by Lutterloh, cancelled an option given him on the property at a thousand dollars less and afterwards with Phillips, a man whom McGriff had not found, bought the property at a much less price through the brother of Lutterloh. In that case there was a failure of the purchaser to buy at the first price or the second price named by Lutterloh, afterwards in association with a third person,

stranger to McGriff, he bought at a much less price through an agent of Lutterloh. In the case at bar there was no failure of the prospective purchaser furnished by plaintiff to buy even at the first price named by defendant, who required him to promise that he would indemnify the defendant for any commission it would have to pay plaintiff on account of its sale.

I think that the issue as presented by the defendant was fully met by the plaintiff and the instructed verdict was correct.

This opinion was prepared in dissent from one reversing the judgment below and which had been concurred in by a majority of this court. Upon further consideration of the case a conclusion was reached in harmony with that arrived at in the foregoing opinion. The writer is causing this opinion to be filed in concurrence with the conclusion reached at the last conference and Mr. Justice West authorizes the statement that he concurs in the views herein expressed.

WEST, J., concurs.