H. MASON SMITH, *Appellant,* v. R. W. SHACKLEFORD AND
ALBERT E. MELLON, *Appellees.*

Division A.

Opinion Filed October 4, 1926.

1. The authority of one who has assumed to act as agent of
   the owner in the execution of what purports to be a com-
   pleted and binding executory contract for the sale of lands,
   must be established as in any other case of agency.

2. The authority of an agent to enter into an agreement for
   the sale of lands and to execute a completed and binding
   note or memorandum thereof on behalf of his principal may
   be created by parol, and may therefore be implied from acts,
   conduct and circumstances, including the relations of the
   parties.

3. An Agent empowered to sell land is a special agent and
   those dealing with him in reference to such land are charged
   with notice of the terms and limitations of the authority of
   such agent to sell the same.

4. An agent's authority to bind his principal in the sale of
   land may not be inferred solely from his employment as
   such agent, whether he be employed to "procure a pur-
   chaser" or to "effect a sale," when the circumstances are
   entirely consistent with his employment as a mere agent or
   broker, and in the absence of other circumstances clearly
   indicating the grant of such greater authority.

An Appeal from the Circuit Court of Hillsborough
County; F. M. Robles, Judge.

Reversed.

*J. T. Watson, and H. H. Cole,* for Appellant;

*T. M. Shackelford, Sr.,* for Appellee.

STRUM, J.—This appeal is from a final decree in a suit in equity awarding specific performance of a supposed agreement to convey land. The owner of the land was defendant below and is appellant here, the suit being brought by the purchasers as complainants below.

The written memorandum relied on by the purchasers as being a compliance with the Statute of Frauds (Sec. 3872, Rev. Gen. Stats. 1920) was not signed by the owner himself, but was signed by one whom the purchasers claim was the agent of the owner, with lawful authority to bind the latter by executing the memorandum of the agreement.

The statute provides that no action shall be brought upon any contract for the sale of lands unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith ''or by some other person thereunto lawfully authorized.'' When the purchaser relies upon the quoted clause of the statute, and deals with one who has assumed to act as agent of the owner, not merely to enter into a negotiation, or to receive proposals, but to execute what purports to be a completed and binding executory contract for his principal, the authority of such agent must be established as in any other case of agency, except where regulated by statute. Roby v. Cossitt, 78 Ill. 638; Taylor v. Merrill, 55 Ill. 52; Fitch v. Boyd, 55 Ill. 307; Bissell v. Terry, 69 Ill. 184; Kein v. Lindley, 30 Atl. Rep. 1063; Hadfield v. Skelton, 69 Wis. 460; Pomeroy's Spec. Perf. (3d Ed.) p. 193. In this State, the statute does not specifically prescribe the mode of conferring upon another the requisite authority

to execute a written memorandum which will bind the owner. Since the note or memorandum is not required to be under seal, the authority of an agent to enter into such an agreement may be created by parol, (Berkman v. Sonntag Inv. Co. 67 Fla. 293; 64 Sou. Rep. 948), and may therefore be implied from acts, conduct and circumstances, including the relations of the parties. Worrell v. Dunn, N. Y. (1 Seld. 229); Fisher v. Bowser, 41 Tex. 222; Rutenburg v. Mein, 47 Calif. 213; Conway v. Sweeney, 23 W. Va. 643; Campbell v. Fetterman, 20 W. Va. 398; Roehl v. Hanmesser, 114 Ind. 311; Lynn v. McLean, 80 Ala. 360. A subsequent valid ratification may also bind the owner.

In this case, Mr. Crowder, the supposed agent, and Dr. Smith, the owner, were the only witnesses introduced upon the question of the existence and scope of the supposed agency. As a witness for the purchasers, Mr. Crowder's testimony is in part as follows: ''I telephoned Mr. Smith one morning and asked him about some land he had recently bought and he told me at that time that he thought that he would sell either part or all of the property and he asked me to call him again; that he wanted to get in touch with his brother as he had some interest with him. I called him again on the morning of April 4th, and asked him if he had seen his brother and he said yes, that they were willing to sell either piece of property but would not sell both of them and I asked him what price. I asked him on what kind of basis he would sell it. We had already discussed prices and terms beforehand, but nothing was definitely settled that morning and he gave me a price as I remember it of $4000.00 on a basis of One Thousand dollars cash and the balance to be paid in one and two years. * * * Q. Well, what else happened? A. In the morning after I got him to list the property I got in touch with Mr. R. W. Shackleford and I told him that we had this

property for sale and I felt sure that he was interested in that section on account of his having been interested in another piece that he did not get. That was why I listed him. * * *." Referring to a subsequent conversation, Mr. Crowder further testified: "That was Thursday. I had to go back in at five o'clock on the same day and Dr. Smith said then that he did not want to option the property and I told him that was all right, that since I talked to him that I had taken a check for deposit from Mr. Shackleford and Mr. Mellon and that the sale had already been consummated. He stated then that he did not want to sell the property and I told him that it was too late and it had already been sold." The following also appears in Mr. Crowder's testimony: "Q. Please state, Mr. Crowder, whether or not he (the defendant) definitely during any of these conversations over the telephone or personally placed the property described in the bill of complaint in your hands for sale at the price and on the terms stated in the receipt that you gave Mr. Shackleford? A. Yes, absolutely. Q. During any of these conversations or any subsequent conversations which you have had with Dr. Smith did he ever deny having given you that authority? A. Never, no, sir. * * * Q. As a matter of fact, during this conversation Saturday morning between you and Dr. Smith and Mr. Cole, did or did not Dr. Smith admit that he had made the sale of the property at the price and terms provided you would make it snappy? A. Yes, sir. Q. And did you ask him if one day was snappy enough for him? A. Yes, sir, that conversation happened." There is other testimony by Mr. Crowder, but his claim of authority in the premises is based upon the circumstances and incidents disclosed by the testimony just related.

On the other hand, the defendant owner, Dr. Smith,

flatly denied that he had ever authorized Mr. Crowder to conclude a sale of the property as his agent, and while admitting that he had several conversations with Mr. Crowder in reference to the sale of the property, he further denied that he had ever definitely listed the property for sale with Mr. Crowder even as a broker. Mr. Crowder himself does not assert that the owner authorized him in terms to execute a written memorandum of the sale on behalf of the owner, but bases his authority to execute the memorandum in question upon the circumstances under which he claims to have received his authority to sell the property.

Even if the evidence in this case could be regarded as sufficient to establish the existence of an agency to sell as a broker, evidence is wholly lacking of the grant by the principal to such agent of the requisite authority to bind the principal by executing a contract or memorandum of sale under the statute. Conceding Mr. Crowder's employment as a broker to sell the property, we find nothing in the evidence in this case to take it out of the rule previously announced by this Court in Rhode v. Gallat, 70 Fla. 536; 70 South. Rep. 471, that "a real estate agent or broker in whose hands an owner places lands for sale, or who is employed to sell lands, does not thereby acquire authority to bind his principal by signing an agreement of sale of such lands. The inference that such real estate agent or broker has been endowed by his principal with authority to bind him in a written agreement of sale cannot be drawn from circumstances entirely consistent with his employment as a mere agent or broker, nor without other circumstances clearly indicating the grant of such greater authority." See also Holmberg v. Queck, 105 South. Rep. 817. An agent empowered to sell land is a special agent, and those dealing with him in reference to such land are

charged with notice of the terms and limitations of his authority as such agent to sell the same.

With respect to the rule announced in Rhode v. Gallat, *supra,* the appellees further urge that since this court, in Wiggins v. Wilson, 55 Fla. 346; 45 South. Rep. 1011, and Varn v. Pelot, 55 Fla. 537; 45 South. Rep. 1015, has recognized a distinction between an employment as a broker to find or secure a purchaser, and an employment to effect a sale; that where the employment is of the latter character, as appellees contend was the case here, it follows that the broker or agent is empowered to enter into a binding contract of sale on behalf of his principal as an incident of his employment to "effect a sale." The distinction mentioned has been recognized by this court in the determination of certain questions. In the cases last referred to, this court was considering only the circumstances under which a real estate broker was entitled to recover compensation from his principal. In deciding that question—one arising purely between the principal and his agent—this Court held that there is a distinction between an employment "to find or procure a purchaser" and an employment to "effect a sale." See also Cumberland Savings & Trust Co. v. McGriff, 61 Fla. 159; 54 South. Rep. 265; Carter v. Owens, 58 Fla. 204; 50 South. Rep. 641; Elliott v. Gamble, 77 Fla. 798; 82 South. Rep. 253; Blue v. Staten, 84 Fla. 274; 93 South. Rep. 686; Sullivan v. Brown, 67 Fla. 133, 64 South. Rep. 455; Pensacola Finance Co. v. Simpson, 82 Fla. 368; 90 South. Rep. 381. But this Court has never held that an agent's authority to bind his principal in the sale of land may be inferred solely from his employment as an agent, whether he be employed to "procure a purchaser" or to "effect a sale," when the circumstances are entirely consistent with his employment as a mere agent or broker, and in the absence of other circum-

stances clearly indicating the grant of such greater authority. Such a conclusion would be contrary to the rule announced in Rhode v. Gallat and Holmberg v. Queck, *supra.*

The decree appealed from is reversed.

BROWN, C. J., AND ELLIS, J., concur;

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.