Irving J. MORITT, Appellant,

v.

Harry L. FINE et al., Appellees.

No. 16299.

United States Court of Appeals
Fifth Circuit.

March 1, 1957.

Rehearing Denied April 5, 1957.

Seymour B. Liebman, Miami Beach, Fla., for appellant.

B. F. Paty, Paty, Downey & Daves, West Palm Beach, Fla., for appellees.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of the trial court dismissing appellant's action for failure of the amended complaint to state a claim on which relief could be granted, the claim being of the right to the specific performance of an alleged contract to sell real estate.

The question for review is whether the amended complaint asserted a claim on which relief could be granted. The answer to this question turns upon the question whether the written document sued on by plaintiff was a valid written contract for the sale of land under the Florida Statute of Frauds, F.S.A. § 725.01.

The facts are not in dispute, since the case is here on appeal from an order dismissing for failure to allege a claim on which relief could be granted.

The amended complaint alleged that the plaintiff had entered into two contracts for the purchase by him of two tracts of land in Florida owned respectively by two groups of the defendants. It alleged also that one Asmar and his firm, also named as defendants, were authorized by the owners of the land to negotiate, agree on terms of sale, and execute the contracts and that they did so. The contracts, denominated "Deposit Receipts," were attached as exhibits to the amended complaint.[1]

1. Exhibit A is the contract alleged to be with Helen Gore. Exhibit B, relating to land owned by Harry Fine, is identical except for description and amounts. Since our decision is based on a construction of these contracts we reproduce the former here practically in full:

"Deposit Receipt

"Miami, Florida March 23, 1956

"Receipt is hereby acknowledged of the sum of—Two Thousand and No/100—By Check Dollars ($2,000.00) from Irving Moritt or assigns proceeds to be held in escrow by Winters, Foskett, Cook & Brackett, Attys. at Law, subject to the terms hereof as a deposit on account of the purchase price of the following described property:

\* \* \* \* \*

"Purchase price:

"One Hundred Thirty-Nine Thousand Eight Hundred Dollars ($139,800.00)

"Terms and conditions of sale:

"$2,000.00 dollars deposit, on acceptance $13,980.00 of which the sum paid on deposit shall be a part thereof. At date of closing and consummation of sale $41,-940.00 of which the sum of $13,980.00 paid on deposit shall be a part thereof. Balance to be taken by purchase money mortgage payable in five years to be made in five equal yearly installments with interest of 5% per annum.

"Seller agrees to surrender possession of herein described premises to purchaser on or before ............ Seller agrees to assume risk of any and all damage to above described premises prior to closing of this transaction, ordinary wear and tear excepted.

"Taxes based on the 1955 assessments, insurance, interest, assessments, rents and other expenses or revenue of said property shall be paid, assumed or prorated as follows: At time of closing.

"Certified liens if any shall be paid in full by the seller, and pending liens if any shall be assumed by the purchaser. It is understood and agreed that this property is being sold and purchased subject to the zoning restrictions, and/or reservations and limitations of record, if any. Seller agrees to convey title free and clear of all encumbrances, except as herein set forth, by a good and sufficient ............ deed.

"Seller agrees to deliver to purchaser within 10 days from the date hereof an abstract to sold property, brought to date showing his title to be good, marketable and/or insurable, and in the event such abstract is not delivered within said time, seller hereby authorizes the undersigned broker to have an abstract made at sellers expense and delivered to purchaser, but in the event that the title shall not be found to be good, marketable, and/or insurable, seller agrees to use reasonable diligence to make the said title good, marketable and/or insurable and shall have 10 days so to do, but if after reasonable diligence on his part, said title shall not be made good, marketable and/or insurable within 10 days the money this day paid and all moneys that may have been paid under this contract shall be returned to purchaser, and thereupon both purchaser and seller shall be released from all obligations hereunder to each other. Or, upon request of the

On considering the original complaint, which was a suit on these alleged contracts for the sale of land, the trial court dismissed the complaint with leave to amend. An amendment was filed alleging in the alternative that the defendant brokers had represented that they had authority to make the contract of sale and execute it on behalf of the owners and that if the court found that they had no such authority then there was a breach of warranty of authority for which plaintiffs were entitled to their damages.

Upon renewed motion the court again dismissed the complaint with 10 days leave to appellant to tender a further amendment for consideration of the court. Appellant tendered a further amendment which differed from the first only in that it alleged a confirmation and ratification of the contract by certain telegrams and letters written on behalf of defendants to the plaintiff.

purchaser, the seller shall deliver the title in its existing condition.

"It is mutually agreed that this transaction shall be closed and the purchaser shall pay the balance of the first payment and execute all papers necessary to be executed by him for the completion of his purchase within 45 days from the delivery of the aforementioned abstract; otherwise the herein named Escrow Agent is hereby directed by both seller and purchaser to divide the moneys being held by said Escrow Agent between the seller and broker herein named as hereinafter provided. It is further agreed that in the event of such procedure the Escrow Agent is relieved from any and all further liability. It is further agreed that in case the transaction is not completed due to any default or failure on the part of the purchaser, the said purchaser shall in that event become liable to the broker for brokerage commission as hereinafter provided. It is further agreed that in case of default by the purchaser, the seller may at his option take legal action to enforce this contract, in which event the purchaser shall pay reasonable attorney fees and court costs, or else the seller may at his option retain one-half of the deposit herein paid as consideration for the release of the purchaser by the seller from any and all further obligations under the contract to the seller, which release shall be implied from such act of retention by the seller.

"Time shall be the essence and this contract shall be binding on both parties, their heirs, personal representatives and/or assigns when this contract shall have been signed by both parties or their agent.

"By Raymond Asmar
"I, or we, agree to purchase the above described property on the terms and conditions stated in the foregoing contract and do hereby approve, ratify, and confirm said contract in all respects.

"Witness:
"Vincent Evans    Irving Moritt    (Seal)
"I, or we, agree to sell the above described property on the terms and conditions stated in the foregoing contract, and do hereby approve, ratify, and confirm said contract in all respects.
"...............  (Seal)
...............  (Seal)
..........    "Witness:
..........
"I, or we, agree to pay to the above signed broker, as commission for finding the above signed purchaser(s) for the above described property, the sum of ........... Dollars, ($......), or one-half of all amounts paid under said contract if the said amounts are retained pursuant to the terms thereof, whichever is the lesser sum.
"...............  (Seal)
...............  (Seal)
"...........
...........    "Witness:
"State of Florida,
County of Dade.
"I Hereby Certify that on this day personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments .............., to me well known to be the person.. described in and who executed the foregoing instrument and acknowledged before me that ........... executed the same freely and voluntarily for the purpose therein expressed.
Witness my hand and official seal at ..........., County of .............., State of ................, this ........ day of ..............., A.D. 19.....
"Notary Public State of Florida
"My commission expires.
"Miami Board of Realtors.
Standard Form No. 1
Deposit Receipt.
Buyer ....................
Seller ....................
Broker ...................
Property .................
Dated ..........., 19 ...."

The action, however, was still on the two "Deposit Receipt" contracts. The district judge declined to permit the second amendment and dismissed the suit.

■ Appellee correctly states the law to the effect that an action should be dismissed for failure to state a claim upon which relief could be granted only "where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim pleaded." Tauzin v. St. Paul Mercury Indemnity Co., 5 Cir., 195 F.2d 223, 224.

■ Probably the clearest example of such a case is where a statute requires a contract to be in writing, as in the case of a sale of land, and it appears on the face of the agreement that it does not satisfy the requirements of the Statute of Frauds. Such is the case here. This document contains many of the elements of two contracts. One is the receipt by Asmar, the broker, for the cash payment which gives rise to certain rights as between purchaser and Asmar. It will be noted that the instrument states on its first line: "Receipt is hereby acknowledged of the sum of $2,000 * * *." and on the last line of the receipt it says "By Raymond Asmar." Between these two lines there is spelled out the terms of a trade (the other contract) which includes an obligation by the purchaser to pay "on acceptance, $13,980, of which the ($2,000) shall be a part thereof," and which ends with the words "this contract shall be binding on both parties, their heirs, personal representatives and/or assigns when this contract shall have been signed by both parties or their agents." There is then a space for signature of purchaser and one for signature of seller following the language "I or we agree to purchase (sell) the above described property on the terms and conditions stated in the foregoing contract and do hereby approve, ratify and confirm said contract in all respects." The blank space provided for purchaser was filled in with the name of the plaintiff, but that provided for the name of seller was blank in both instruments. It had never been signed either by the owners or by any one purporting to be their agent.

Appellant contends that the signature of Asmar to the deposit receipt amounted to a "signing" by the owner under the allegations of the complaint that Asmar was authorized to execute the contract.

■ Under the Florida rule that permits authorization of an agency to execute a contract for sale of land by parol[2] we may say that had Asmar signed the contract so that his signature stood for an acceptance of its terms quite a different question would have been presented to the trial court for decision. Here, though, it plainly appears that however much authority it is alleged Asmar had to act for the owners of the land he did not purport to exercise this authority by signing as their agent to sell; his signature merely acknowledges his own receipt of the money and his own consequent obligation.

We hold, therefore, that these documents, in addition to being deposit receipts signed by Asmar, were also offers on the part of appellant to buy the tracts of land from the owners Fine and Gore on the terms therein expressed—offers which were not accepted by them. It was thus not a valid contract for the sale of land as required by the Florida Statute of Frauds.

There is nothing in Forbes v. Babel, Fla., 70 So.2d 371, cited by appellee as dealing with this same type of "Deposit Receipt," that shows that the court there was dealing with an unsigned agreement.

■ What we have said as to the lack of liability of the owners of the

2. Triplett v. Lucas, 94 Fla. 159, 113 So. 685; Smith v. Shackleford, 92 Fla. 731, 110 So. 358; Beekman v. Sonntag Inv. Co., 67 Fla. 293, 64 So. 948.

property to the "purchaser" on this agreement must, of course, also make clear the absence of any claim of the plaintiff against the agents for a breach of warranty of their authority. Inasmuch as they did not purport to execute a valid contract for the sale of land, since they did not "sign" that contract at all, their alleged representation that they were authorized to do so would not be actionable even if false. This is so because plaintiff could not be hurt from the want of authority to do an act which the agent did not pretend to do anyway.

■ The trial court was clearly right in dismissing the suit unless he abused his discretion in rejecting the tendered second amendment. We think he did not err in refusing that amendment because it added nothing to the claim. It asserted that the defendants had ratified and confirmed the contracts by a telegram and two letters, both of which were signed by members of a firm of lawyers. Reference to the proposed amended complaint and to the telegrams and letters makes it perfectly clear that they refer to two entirely different contracts which are nowhere pleaded by the complaint. The entire suit being on the pleaded contracts, as still insisted on by appellant here, the trial court properly declined to permit the amendment which alleged that letters relating to other contracts ratified and confirmed the one sued on. They showed on their face that they did not do so.

The judgment is affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

Reminiscent to me of the nice, intriguing dialectic inquiries of common law pleading, a point of view which Florida Judges, steeped in the lore and traditions of their local practice,[1] seem reluctant to discard with consequent delay and expense as that approach comes into collision[2] with the Federal Rules of Civil Procedure, 28 U.S.C.A., the nub of the Court's decision is that the pleaded contract violated the statute of frauds because the Seller did not sign on the right line. The Court puts it thus:

"* * * The blank space provided for purchaser was filled in with the name of the plaintiff, but that provided for the name of the seller was blank in both instruments. It had never been signed either by the owners or by anyone purporting to be their agent.

"Appellant contends that the signature of Asmar to the deposit receipt amounted to a 'signing' by by the owner under the allegations of the complaint that Asmar was authorized to execute the contract.

"Under the Florida rule that permits authorization of an agency to execute a contract for sale of land by parol we may say that had Asmar signed the contract so that his signature stood for an acceptance of its terms quite a different question would have been presented to the trial court for decision. Here, though it plainly appears that however much authority it is alleged Asmar had to act for the owners of the land he did not purport to exercise this authority by signing as their agent to sell; his signature merely acknowledges his own receipt of the money and his own consequent obligation."

1. In Des Isles v. Evans, 5 Cir., 200 F.2d 614, 615, Judge Rives, reversing a dismissal for failure of complaint to state a claim, pinpointed the marked contrast between the Florida State practice and the Federal Rules by quoting from Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 49 So. 1024, 1025: "It is settled law here that every pleading is to be construed most strictly against the pleader thereof, and also that a declaration in an action at law should allege distinctly and clearly every fact that is essential to the plaintiff's right of action."

2. Of thirteen cases listed in note 1, Millet v. Godchaux Sugars, Inc., 5 Cir., 241 F.2d 264, reversed since 1938 for improvident orders dismissing complaints for failure to state a claim, nearly 50% (6) of the cases were from Florida.

But the statute of frauds is not one of trivial formalism. It[3] requires a writing signed by the party to be charged, but it does not require that it be signed at any particular place, or in any particular way, or with black, green, red, or blue ink. If it is the fact that it was signed, rather than the meticulous details of the *act* of signing that is important, what was the state of this record?

Since what we now have is a question of pleadings only, it is plain that the Complaint[4] did allege categorically that the defendants (sellers) did execute the contracts and that the agents (Asmar) who signed for them had express authority to act. Of course, to "execute" means to sign, so that the words, read as they must under the Federal Rules, actually alleged that the sellers signed the contracts.

On what grounds is the plaintiff denied the right to try to prove those allegations?

It is not that it was the agent rather than the principal who signed. For we are all in agreement (see Note 2 Court's opinion) that parol evidence can be used to establish authority of the agent to sign and thus satisfy the statute of

frauds. Nor is it because the Court feels that the words of the pleading did not assert that Asmar had authority to act for and bind the seller. This is impliedly, if not expressly, assumed. The reason boils down to the absence of pleaded circumstances, the nature of which is completely undisclosed, to show that Asmar's "signature *stood* for an acceptance," and, apparently, the existence somewhere in the pleadings of irrefutable "facts", cf. Stanton v. Larsh, 5 Cir., 239 F.2d 104, that Asmar "did not *purport* to exercise this authority by signing as their agent to sell * * *." And this, as I read it, is then transmuted into more specific, tangible terms, to be that Asmar did not sign for the sellers since his signature appears only on the line where the broker customarily signs and did not again appear at the *place* where the blanks called for the seller's signature.

But neither the statute of frauds nor the elements of a contract requires such ritualism. If the agent has authority (a matter dependent upon proof, not pleading), the contract is binding on the principal even though the paper is signed by the agent in the agent's name.[5] Consequently, if Asmar had au-

---

3. Florida Statutes Annotated, West Publishing Company, § 725.01: "No action shall be brought * * * upon any contract for the sale of lands * * * unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and *signed* by the party to be charged therewith or by some other person by him thereunto lawfully authorized." (Italics supplied.)

4. Both the first and last Amended Complaints alleged:

"9. That on or about March 23, 1956 two certain contracts copies of which are annexed hereto and made part hereof and labelled Exhibits A and B, were executed by the plaintiff as purchaser, and by defendants Asmar and Evans as agents for and on behalf of the defendant-owners of said tracts of land and as the agents and servants for and on behalf of defendants Raidle and Raidle Corporation; and simultaneously therewith the plaintiff delivered to said Evans and Asmar, as such

agents, plaintiff's check for the sum of $5,000 * * *.

* * * * * *

"12. That prior to and during the times mentioned herein, the defendant-owners authorized and empowered the other defendants, [includes Asmar and Evans], on their behalf, that is on behalf of the defendant-owners:

"(a) To effect and consummate the sale of said tracts of land by entering into binding contracts in the name or names of such other defendants;

"(b) To negotiate and finally fix the terms and price for the sale of said tracts of land; and

"(c) To enter into the annexed contracts, Exhibits A and B."

5. 49 Am.Jur., Statute of Frauds, § 413, p. 716: "When a person acts for a principal and that fact is known to the party dealing with him, his contract, although executed in his own name, binds his principal equally as though signed in

thority (a thing which his pleading declared him willing and able to prove and which Florida policy permits him to prove), the letters spelling "Asmar" spelled out as well "Helen Gore" and "Harry Fine and Ruth R. Fine."

And if, as our hypothesis now assumes, Asmar had authority, then the *place* or *manner* of his signature is utterly immaterial [6] so long as intention to authenticate the contract is shown and for which extrinsic parol evidence

the name of the principal, and parol evidence is admissible to show the fact of his agency in order to charge the principal, notwithstanding the writing is executed by the agent in his own name."

49 Id. § 415, p. 718: "The contract being complete, it has no further concern with the statute [of frauds], and in the great majority of jurisdictions parol evidence is admissible to add a new obligor or obligee by showing that one of the parties was in fact acting as the authorized agent of a third person * *."

37 C.J.S., Statute of Frauds, § 215, p. 712: "* * * a signing * * * by the agent * * * even though the existence or name of the principal does not appear, is sufficient to satisfy the * * statute of frauds."

2 Corbin on Contracts (1950), § 525, p. 777: "* * * The signature of the agent is sufficient, even though he signs as if he were himself the principal and does not even disclose that he is acting for any other person."

Restatement of the Law of Contracts, § 207 concerning the requirement of subparagraph (a) that the writing must show with reasonable certainty that "(a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent," gives the following illustrations 5 and 6:

"5. C and D make an oral contract to buy and sell Blackacre and make the following memorandum of their bargain:

" 'C agrees to sell and D agrees to buy Blackacre for $10,000.

" '(Signed) C
D'

"C is agent for A, and D is agent for B, and each agent is acting on behalf of his principal. The memorandum is sufficient to charge A and B.

"6. A memorandum, otherwise sufficient of an oral contract for the purchase and sale of Blackacre states that 'the owner of Blackacre' promises to sell it. The memorandum is signed by B who is the agent of A, the owner of Blackacre. The memorandum is sufficient to charge A."

6. 1 Corbin, Contracts, § 31, p. 90: "A signature may be operative without re-

spect to its position on the document, although it is customary to sign at the end of the writing and beneath the written provisions. There must be satisfactory evidence that the signature was affixed with intent to authenticate and express assent to the entire document."

2 Id. § 520, p. 762, as to the signature " * * * it must be shown * * that the name is there as such an authenticating signature. Oral evidence is undoubtedly admissible to explain the name or symbol appearing on the document and to show the purpose for which it was put there. No document can ever prove its own execution and delivery. Whatever the form of the alleged signature, extrinsic testimony is always necessary to prove when, by whom or by whose authority, and for what purpose it was attached."

2 Id., § 521, p. 764: " * * * a name appearing on any part of the document is a sufficient signature if it is shown to have been inscribed there or adopted by the party to be charged as an authentication of the whole memorandum."

2 Id., § 522, p. 767–768, as to the form or manner of signature, " * * * the courts have been uniformly liberal in holding the memorandum to be sufficiently signed without regard to the form of signature or the manner of inscribing it, * * * The more unusual it [the signature] is in these respects the more testimony in addition to the face of the writing itself may be required to establish the fact that the writing is 'signed'."

37 C.J.S., Frauds, Statute of, § 202, p. 695: "The signature authenticating the memorandum does not need to be in any particular form as long as the act is intended to be equivalent to actual signature."

37 Id., § 205, p. 697: " * * * the position of the signature is immaterial * * *."

49 Am.Jur., Statute of Frauds, § 379, p. 681: "The writing of his name at the top, in the body, or at the bottom of the instrument constitutes a sufficient signing or signature if it is written for the purpose of giving authenticity to the instrument."

Restatement, Contracts, § 210 (1932).

is permissible. The fact that it is the agent, signing in his own or in the principal's name, does not alter this rule.[7]

Without a doubt, the seller personally could have initialed, scrawled, scribbled, or printed his own name, part of it, or hieroglyphic substitutions for it, any place on the paper—top, bottom, left or right margin, across the face, or on the reverse side; and if its presence, or legibility, or nature was equivocal, parol evidence would have been admissible to establish it and the intention to authenticate the contract. 2 Corbin, Contracts, §§ 520–528.

What the principal could have done himself, the authorized agent can do for him. So Asmar, using the letter symbols actually spelling out his own name but vicariously spelling the seller's name as well, or spelling out the name of the seller (with or without a by-line "By Asmar") could have indicated acceptance by the seller in any one of these, or a variety of the other ways.

If he could do it by writing his own name, or writing the principal's name any *place*, he could do it by writing[8] his own name *once*. To require that an

agent with this authority write his name twice (once, as broker, and again to bind the principal) would, for Florida whose statute requires only a "signing" (note 3, supra), not a signature "subscribed," precipitate an etymological how-many-angels-can-dance-on-the-point-of-a-needle formula more rigid and artificial than the most extreme decisions reading "subscribed by the party" to mean a signature *under* the memorandum and about which Corbin (2 op. Cit., supra, § 521, p. 764) writes:

> "Probably they have never gone so far as to hold that if a dotted line is prepared by the typist the signature must be exactly on the dotted line."

We are unanimous that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim * * *", Des Isles v. Evans, supra [200 F.2d 615]. Consistent with the principles I have set out at length, how can we say that proof[9] was, to a moral certainty, not available?[10]

---

7. 49 Am.Jur., Statute of Frauds, § 414, p. 717: "The principle that the signature need not be at the end or foot of the writing but may appear at the top or in the body of the memorandum, provided the circumstances indicate that it was inserted or adopted with the intent to authenticate the writing, is applicable to a writing prepared by the agent of the party to be charged."

8. It is significant that the contract, note 1 Court's opinion, does not state how, or in what manner, or where the parties or agents are to sign:
   "Time shall be the essence and this contract shall be binding on both parties * * * when this contract shall have been signed by both parties or their agent."

9. The signing of the Amended Complaint itself carries substantial weight under counsel's warranty, F.R.Civ.P. 11: "* * * The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay * * *."

10. In testing the Complaint under F.R. Civ.P. 12, the Court, in the absence of some compelling, contrary circumstance, would have to anticipate that the plaintiff would offer testimony that the seller at a certain time and place expressly told the broker that he could sign for him, etc.; or testimony or facts, such as, conversations between broker and seller, from which the implied authority to sign for him could be inferred; or testimony that the seller by an exchange of telegrams, letters or other writings expressly or impliedly authorized the agent to sign for him; and testimony that in the act of writing his own name on the "By" line, the agent intended to act for the seller too.

Whether the purchaser can meet the heavy demands which proof of this authority and intention will require is a matter of evidence, not pleadings. What I mean to say is that the purchasers should be given that chance, and on that evidence, by motions for summary judgment,[11] motion for judgment on trial before the court, or motions for instructed verdict, or judgment n. o. v. if tried by jury, Millet v. Godchaux Sugars, Inc., supra, its sufficiency under Florida law and policy can be determined. The necessity and sanctity of written contracts will be preserved with all of the protection which Florida demands, but in keeping with the spirit of the Federal Rules, the case will have been decided on the real facts, not on awkward, stilted, or archaic language of the lawyer-pleader.

To this day no one knows whether the sellers gave this authority to Asmar, or if they did, whether he meant his name to be for them too. If they did, cutting this claim off in this fashion is an irretrievable loss.

I therefore respectfully dissent.

Rehearing denied: JOHN R. BROWN, Circuit Judge, dissenting.

Under the Court's ruling, if the following were established to be the absolute, uncontradicted truth, the plaintiff would nevertheless be denied the opportunity of proving it: at a date prior to the physical signing of the paper by the agent, the seller, in the presence of three disinterested witnesses of unimpeachable integrity, and coincidentally recorded on a tape recorder in experimental testing of a machine, categorically said to the agent (as to the Gore trade, Exhibit A), "If Moritt will pay me $139,800, with $13,980 down on the date of acceptance making a total of $41,940 down on

the date of closing, with the balance under a purchase money mortgage of five equal, annual installments at 5% interest, you are authorized to sign the contract on my behalf"; and following this, having obtained the terms required for the trade, the agent signed the paper opposite the word "By" intending that it bind the seller as well as the agent.

11. From the argument we were informed that defendant-sellers actually sought summary judgment on affidavits, etc., but the Judge thought this wholly unnecessary as it could better be disposed of on the pleadings.