Cheshire,
No. 4801.

PHILIP W. CROTEAU *v.* FRANCES ASH & a.

Argued February 2, 1960.

Decided March 31, 1960.

*Bell & Bell* (*Ernest L. Bell III* orally), for the plaintiff.

*Howard B. Lane* (by brief and orally), for the defendants.

DUNCAN, J. The action arises out of the execution of a document prepared upon a printed form bearing the name of the defendant Frances Ash at the top, which was filled in by the defendant Charles Ash, after the plaintiff had orally agreed to pay $15,000 for certain premises in Keene, which had been listed for sale with the defendants by the heirs of the Beard Estate, so-called. The document was under date of January 9, 1956, and acknowledged receipt of $300 on account of the purchase price of the property therein described. Between a brief description of the property, and a statement of the total purchase price of $15,000, appeared the printed words: "Due to conditions there of," followed by a blank which was completed by the defendant Charles to read; "acceptance by planning board of Keene of lot layout." Beneath the statement of the price was a statement of agreements relating to the effect of failure of performance by either party, the effect of damage to

the property pending conveyance, apportionment of taxes and similar matters.

These provisions were in turn followed by a line for the signature of the "Real Estate Agent" which bore the signature of the defendant Charles: "By Charles G. Ash, Real Estate Agent." Beneath his signature appeared the printed words "I agree to purchase the above described property on the terms and conditions herein stated," followed by two lines for signature above the words "Seller" and two lines above the word "Purchaser."

The document was first signed by the defendant Ash as indicated, and by the plaintiff as purchaser. It was next signed by the plaintiff's wife as a purchaser, and then was submitted by the defendant Frances to Hazel M. Mills, one of the heirs who resided in Keene, who signed upon one of two lines above the word "Seller." At that time Mrs. Ash wrote upon the margin of the agreement opposite the clause relating to "conditions," the notation: "Note below," with an arrow pointing to the bottom margin, where she wrote the words; "and that all heirs of Beard Estate are agreeable."

A copy of the agreement, bearing the signatures and notations described above, was mailed to the plaintiff on January 13, 1956. The plaintiff testified that when he received the copy he looked at it, "opened it up" but put it away without reading it or noticing the notation at the bottom. He thereafter retained counsel to procure authority to subdivide the land into lots, arranged to finance his purchase, accepted a deposit on account of an agreed sale price for the dwelling on the premises, and incurred other expense in anticipation of constructing and selling houses on the land.

During this time the defendants undertook to obtain deeds from the heirs, some of whom were outside the state. In this they were unsuccessful, and on March 28, 1956, they returned the plaintiff's deposit. There was evidence that the property was ultimately acquired by one of the heirs who refused to join in sale to the plaintiff. However this heir reimbursed him in the amount of $495 which was the major part of his out-of-pocket expense.

The plaintiff's evidence with respect to the negotiations was as follows: He testified that up to February 20, 1956 he "believed" he had a valid contract for purchase of the real estate. He disputed the testimony of the defendant Charles that the latter had called his attention to the notation placed upon the agreement at the time of signature by the local heir, and denied that he was told by him that other signatures were needed. On direct examination

by his own counsel however, he testified that he was "relying on [Mr. Ash] to get [him] a valid sales agreement," and that Ash told him when he signed the agreement that "he had to get it signed by the heirs." He further testified that Mr. Ash said that he represented the Beard estate, and told him that Mrs. Mills had to sign the agreement, but did not tell him whether any one else had to sign it. He disputed Mr. Ash's testimony that he had talked with him about the failure to get other signatures.

There was no evidence that the defendants represented that they were authorized to execute an agreement on behalf of the sellers, or that they undertook to do so. While the plaintiff testified that he believed that he had a valid agreement, there was no evidence that the defendants represented that he did, or warranted that they had authority to "effectuate a sale," or falsely or improperly assumed such authority, unless the evidence that the defendant Charles told the plaintiff that he "could have the property for $15,000" was such a representation. The defendants' evidence of authorization to offer the property at the price in question was not contradicted however.

Upon this record we are of the opinion that the directed verdict was properly entered. While it was findable that the plaintiff was told that he could buy the property for $15,000, he could not reasonably be found justified in relying upon this oral assurance in the face of written notice that consent to the sale by owners other than Mrs. Mills was necessary, and his concession that he was told that the signatures of the "heirs" had to be obtained. See Restatement of the Law (Second) Agency, s. 331, comment b; Toohey v. Davis, 85 N. H. 80, 87.

The claims of breach of warranty of authority and of "false . . . assumption" of authority (see Weiss v. Baum, 218 App. Div. (N.Y.) 83) have no greater support in the record than the claims of false representation. "A person who purports to make a contract . . . or representation on behalf of another . . . whom he has no power to bind, thereby becomes subject to liability . . . upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized." Restatement (Second), Agency, s. 329. "Thus in the case of an oral executory contract within the Statute of Frauds, the unauthorized agent is not liable if the principal fails to perform on the ground that the contract is not in writing." Id., comment j; Moritt v. Fine, 242 F. 2d 128 (5th Cir. 1957).

So far as appears, the defendants assumed to do no more than they were authorized to do, and the necessity for the written agreement of the heirs who were their principals was admittedly disclosed. The memorandum executed by Mrs. Mills as a "Seller" was insufficient to satisfy the statute of frauds (RSA 506:1), and indicated upon its face that it was conditioned upon "all of the heirs of Beard Estate [being] agreeable." Even if it could be found that the defendants acted beyond their authority, any loss suffered by the plaintiff resulted from the lack of a contract with the owners rather than any misrepresentations, or breach by the defendants of any implied warranty of authority. *Bloom* v. *Young*, 205 Ky. 142; *Dung* v. *Parker*, 52 N. Y. 494; *Hoon* v. *Hyman*, 87 W. Va. 659, 662, 663. Since the evidence was insufficient to warrant a finding for the plaintiff, the order is

*Judgment for the defendants.*

All concurred.