**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff/Appellant,**

v.

**Anthony C. BARRASSO, et al., Defendants/Appellees.**

No. 85–3613.

United States Court of Appeals, Eleventh Circuit.

June 25, 1986.

Corrected.

Robert M. Quinn, Tampa, Fla., Myers N. Fisher, Federal Deposit Ins. Corp., Washington, D.C., for plaintiff-appellant.

R. Thomas Farrar, Miami, Fla., for Barrasso.

Stephen B. Rakusin, Gainesville, Fla., for Lenhardt & East Bay Inv. Fund, Ltd. & East Bay Country Club.

Before GODBOLD, Chief Judge, TJOFLAT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

GODBOLD, Chief Judge:

Federal Deposit Insurance Corporation's (FDIC's) predecessor in interest, Metropolitan Bank and Trust Company,[1] initiated this suit to foreclose on four properties owned by Peter and Helen Lenhardt. It alleged that it had valid mortgages to these properties and that the loan that the properties secured was in default. The Lenhardts acknowledged the validity of FDIC's mortgages as to all but one parcel of land. They contended that this parcel was included in one of the mortgages without authorization. The district court denied foreclosure. We reverse.

The mortgage in question arose from Anthony Barrasso's purchase of land from East Bay Investment Fund, Ltd., a limited partnership composed of Peter Lenhardt and C. Thomas Petersen. Its articles of limited partnership listed Lenhardt as a general partner and Petersen as a limited partner. Under the limited partnership agreement and Florida law, only Lenhardt, as the general partner, was authorized to encumber partnership property. *See* Fla. Stat.Ann. 620.081(3) ("Unless otherwise provided in the [partnership] certificate, a[n] ... encumbrance of real property ... shall be executed in the partnership name by one of the general partners."). Lenhardt testified at trial that, despite these restrictions, Petersen handled all the partnership's financial transactions. The dis-

---

**1.** Metropolitan Bank failed during the course of    this litigation and was assumed by FDIC.

trict court found that Lenhardt "informally shared his authority as general partner with Petersen." Dist. Ct. Op. 2. On March 29, 1979, Lenhardt and Petersen executed an agreement officially allowing Petersen "to sign and execute any and all documents relating to the Limited Partnership." After the events leading to this suit East Bay was dissolved, and the land in question passed to Lenhardt and his wife.

On March 9, 1979 East Bay sold a parcel of land to Barrasso. The deed conveying the property was signed by Lenhardt. The land was paid for through a loan Barrasso obtained from Metropolitan. As security Metropolitan received a mortgage on the property Barrasso bought plus, as additional security, mortgages on other property owned by East Bay.[2] The mortgage at issue stated that it encumbered the property listed in "Exhibit 'A' attached hereto, consisting of one page." Two pages were attached to the mortgage. The first, labeled "Exhibit A," described an 8.620 acre parcel of land. The second parcel, which contained no reference to the mortgage, described a 2.025 acre parcel. The mortgage was signed, "C. Thomas Petersen, Partner." Lenhardt did not sign the mortgage.

Barrasso defaulted on the 1979 loan, and Metropolitan filed a state court action seeking to foreclose on the mortgages. The Lenhardts removed to federal court and answered the complaint, acknowledging Metropolitan's right to the 8.620 acre parcel but asserting that Metropolitan was not entitled to the 2.025 acre parcel. They did not allege that the 2.025 acre parcel was not intended by Petersen or Metropolitan to be part of the mortgage; rather, they contended that Petersen's encumbrance of the property was unauthorized and the mortgage as to that property could not be enforced.

After a nonjury trial the district court ruled that FDIC, which had replaced Metropolitan in the suit, was not entitled to foreclose on the 2.025 acre parcel. It held that Petersen had not been given sufficient authority to overcome his status as a limited partner and that Lenhardt never ratified Petersen's actions. It noted that although Lenhardt had been negligent in not investigating the deal Petersen had struck with Metropolitan, Metropolitan's negligence in not discovering the limited authority Petersen possessed was greater. The court then held that this greater negligence barred foreclosure on the 2.025 acre parcel.

## DISCUSSION

Crucial to the district court's refusal to allow FDIC to foreclose on the 2.025 acre parcel is its finding that Petersen lacked authority to mortgage this land. We review this finding under the clearly erroneous standard. Fed.R.Civ.P. 52(b); *See U.S. v. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

At trial the only evidence offered on Petersen's role in East Bay was Lenhardt's deposition. In regard to the transaction with Barrasso, Lenhardt explained that Petersen handled the matter and had told him that "there was a loan that was going to be made at the bank, and the property was going to stand good for the loan and that we were going to be required to add a second parcel which Mr. Petersen and I had joint ownership in, ... and that was going to be added as additional collateral to secure the repayment for the loan he was making." TR 15–16. Lenhardt stated that he consented to this deal, TR 17, and that he never "object[ed] to the additional collateral as it was explained to me being pledged to the loan Mr. Barrasso made ...." TR.22. He also testified "that we were going to sell the property for cash and so obviously, you know, from my point of view, any cash sale—this was at a time when the company was troubled because of the economy and various other reasons. So any cash sale sounded like a very good, you know, event to take place." TR.28.

---

**2.** The validity of these other mortgages is not involved in this appeal.

Lenhardt also testified to the role Petersen played in the general affairs of East Bay. He stated,

> I never for fifteen or sixteen years had a thing to do with a single financial transaction or mortgage transaction in The Suncoast Hyland Corporation or any of the related companies [which includes East Bay] except at whatever point in time Mr. Petersen and I agreed to dissolve our business interests.... Up until that point in time, he was the operating officer and the financial officer of all the entities in which I had any interest in and I was the marketing officer. And we had very distinct duties. I sold the land and properties and he took care of all financial matters.

Tr.18. When questioned on Petersen's official status in East Bay, Lenhardt responded, "I never really understood the—you know, completely what his status was because I know he told me two or three times that he had transferred some property.... And I said well, how could you do that? and he just said, well, I'm a partner. And, you know, he said, what difference does it make, we're equal partners, aren't we? And I said, well, yes, you know." Tr. 30.

Based on this record the district court's finding that Lenhardt did not authorize Petersen to mortgage the property in question is clearly erroneous. Lenhardt let Petersen run the financial affairs of East Bay for over 15 years. During that time Petersen had transferred and mortgaged property, and Lenhardt either did not object or affirmatively acquiesced. *Restatement of Agency 2d* § 43 states, "Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future." As the comment to this section explains, "Persons ordinarily express dissent to acts done on

their behalf which they have not authorized or of which they do not approve." Here, Lenhardt not only did not voice his disapproval of Petersen's handling of the financial matters of East Bay, including the transferring of property in violation of the articles of the limited partnership, but according to his testimony, he affirmatively approved of this arrangement. *See Rushing v. Garrett*, 375 So.2d 903, 906 (Fla.App. 1979) ("The authority of an agent to enter in ... an agreement for the sale of lands, on behalf of his principal, may be created by parol evidence, and may also be implied from the acts, conduct, and circumstances ... of the parties."); *Sapp v. City of Tallahassee*, 348 So.2d 363, 367 (Fla.App.1977) ("[An agency agreement] may be proved by the facts and circumstances of each particular case, including the words and conduct of the parties.") [3]

That Lenhardt and Petersen entered into an agreement on March 29, 20 days after the mortgage in question was executed, expressly allowing Petersen to encumber assets of East Bay, does not undercut the conclusion that prior to this time Petersen was authorized to perform such acts. As the district court noted, this "agreement formalized what was probably Petersen's status as an equal, and general partner in East Bay." Dist. Ct. Op. 7.

Florida law only authorizes general partners to encumber assets of a limited partnership. But Lenhardt's authorization of Petersen to handle the financial transactions of East Bay made Petersen Lenhardt's agent. The actions undertaken by Petersen pursuant to this authorization are attributable to Lenhardt. *See Restatement of Agency 2d* § 12. Thus by signing the mortgage in question, Petersen bound Lenhardt, and thereby East Bay, to its terms. That Lenhardt may not have

---

**3.** There is no written instrument authorizing Petersen to encumber the lands of East Bay on behalf of Lenhardt. Neither party has raised a statute of frauds issue regarding this mode of authorization. Thus, we need not decide whether Florida law requires written authorization to

create a valid agency agreement for the disposition of real property. *Cf. Smith v. Shackleford*, 110 So. 358, 358–59 (Fla.1926) (absent statute to the contrary, Florida law does not require written agency agreement for the disposition of real property).

known the specifics of the Barrasso transaction is immaterial. He had authorized Petersen to handle East Bay's financial matters; he knew that East Bay was selling land to Barrasso and that as part of the arrangement Petersen worked out East Bay was to mortgage some of its property to secure the loan to Barrasso. He never dissented from or inquired further into the Barrasso transaction. He cannot now assert that Petersen exceeded his authority simply because he failed to tell Lenhardt the exact nature of the property mortgaged.

REVERSED and REMANDED with instructions to enter judgment in favor of FDIC.