Beekman v. Sonntag Invest. Co.—Syllabus.

D. D. BEEKMAN, *Appellant,* v. SONNTAG INVESTMENT COM-
PANY, A CORPORATION, *Appellee.*

Opinion Filed March 31, 1914.

SPECIFIC PERFORMANCE—PRINCIPAL AND AGENT—PAROL
AUTHORITY IS SUFFICIENT FOR AGENT TO EXECUTE
CONTRACT FOR SALE OF LAND—PUBLIC MAY
RELY ON AGENTS' APPARENT AUTHORITY.

1.  If the vendor of land is in a situation to obtain title, is in
    such a situation that it is only necessary, for instance, for
    him to pay the sum of five hundred dollars to the executor
    of an estate who holds the legal title and who is bound by
    the terms of his testator's will to convey the same upon such
    payment by the vendor, or to do like acts clearly within his
    power and thus acquire title, a court of equity will retain
    the bill, will require him to perform such acts, and will decree
    specific performance.

2.  The acts of an agent, performed within the scope of his real
    or apparent authority, are binding upon his principal.   The
    public have a right to rely upon an agent's apparent authority,
    and are not bound to enquire as to his special powers, unless
    the circumstances are such as to put them upon enquiry.

3.  Parol authority is sufficient to authorize an agent to execute
    a contract for his principal for the sale of real estate.

Appealed from Circuit Court for Volusia County; Jas.
W. Perkins, Judge.

Decree reversed.

*Rufus M. Robbins,* for Appellant;

*Stewart & Bly,* for Appellee.

STATEMENT.

The appellant as complainant below filed his bill of complaint in equity in the Circuit Court of Volusia County against the appellee as defendant below, alleging therein as follows:

"D. D. Beekman, of Washington, in the District of Columbia, brings this, his bill, against the Sonntag Investment Company, a corporation organized and existing under the laws of some one of the United States other than the State of Florida, and having an office and doing business in 'Evansville, Indiana, and at Seabreeze, in the County of Volusia and State of Florida.

And thereupon your orator complains and says, that said Sonntag Investment Company on the 11th day of June, 1908, being, or pretending to be, seized and possessed in fee simple of the following described real property, situate, lying and being in the County of Volusia and State of Florida, to-wit: Lots Two (2) and Three (3), Block Forty-five (45), and Lots Two (2), Four (4) and Six (6), Block Forty-two (42), according to the map of East Daytona of record in the office of the Clerk of the Circuit Court of Volusia County, Florida, in Map Book Two, page one hundred and six (106), entered in a written agreement with your orator by which it sold your orator said lots and your orator paid therefor the sum of One Dollar, the receipt whereof was acknowledged by said Sonntag Investment Company, and agreed to give said Company a bill of sale for the auxiliary yacht 'Crystal Wave.' Said written agreement was signed 'Sonntag Investment Co., A. I. Miller, Resident Agent,' and 'D. D. Beekman;' was witnessed by H. G. Wilson and John W. Williams, who signed their names as subscribing witnesses thereto, and was acknowledged by the said A. I.

Miller as resident agent, and by your orator on said 11th day of June, 1908, and was filed for record and recorded according to law on the 20th day of August, 1908, in Book 45 of Deeds at page 486 of the records of Volusia County, Florida, as by the original of said instrument in possession of your orator, with its certificates of acknowledgment and record will more fully appear, and which your orator is ready to produce in court when required.

(2) Your orator further shows unto your Honor that within a few days after the execution of said written agreement he delivered said yacht 'Crystal Wave' to said Sonntag Investment Company (who have used the same as their own property and had said yacht altered from an auxiliary yacht to a launch), and would have given said company a bill of sale of said yacht had they required it, but your orator was informed by the Customs authorities that said yacht being under twenty tons measurement had been dropped from registry and that no bill of sale was necessary but that title to her would pass by delivery of possession as in case of other personal property, and your orator communicated such information to the agents and officers of said company and they did not require a bill of sale. Your orator however, to comply literally with said contract on his part has executed a bill of sale of said yacht which is filed in the court with this bill of complaint and tendered to the defendant.

(3) Your orator further shows unto your Honor that in October, 1908, one W. L. Sonntag, the treasurer, and at that time the local manager of said company at Seabreeze, Florida, explained to your orator that a mistake had been made in the description of one of the lots sold and wrote on the top of said contract—'Lot No. 3B No. 42 to be substituted for lot No. 2B. No. 42' and your orator accepted such amendment of said contract.

(4) And your orator shows unto your Honor that he has fully complied with his part of said contract by delivering to defendant said yacht 'Crystal Wave,' but the defendant refused to make him a conveyance by deed of said lots Two (2) and Three (3) of Block Forty-five (45) and Lots Three (3), Four (4) and Six (6) of Block Forty-two (42) of East Daytona upon his request and claim that said A. I. Miller, who signed said contract, had no authority and never was an agent of said company further than that he received commission for selling various lots, but your orator says that said Miller had a sign on the office of the Sonntag Investment Company at Seabreeze, stating that he was its resident agent; that on the 15th day of June, 1908, said company contracted to deed him lot 3 of Block 18 of East Daytona for $500 and took his note due in one year for $450.00 of said price and demanded payment of said note on its maturity through the Merchants' Bank of Daytona, thus recognizing the validity of said contract although it is signed 'Sonntag Investment Company by A. I. Miller, resident agent,' and by your orator precisely as in the contract which said company now seek to repudiate.

(5) Your orator further shows unto your Honor that at the time said agreement was under consideration Mr. Miller, Mr. W. L. Sonntag, Mr. M. L. Waggoner and your orator were together at the office of the Sonntag Investment Company at Seabreeze; that both Mr. Sonntag and Mr. Waggoner were directors of said company and Mr. Sonntag was manager at Seabreeze, although he has recently been succeeded in that position by Mr. Waggoner; that it was decided to take the Crystal Wave in trade for said lots and Mr. Sonntag told Mr. Miller to make out the contract, in your orator's presence, and Mr. Miller drew a contract, which on reading, your orator

rejected, as it was in the form of an option; thereupon Mr. Sonntag said to Mr. Miller, 'You have power of attorney and can fix this up with the Doctor tomorrow,' and thereupon your orator was led to believe that said Miller had full authority in the premises and accepted the contract set up in this bill and delivered said yacht to said Miller as the resident agent of said defendant. Your orator further shows that within a few days thereafter the said Sonntag, Waggoner, Miller and others took a trip on said yacht to St Augustine, and used said boat as the property of said company until the fall of 1908, when they took her to Root's boatyard at Daytona, and had her materially altered and changed in many respects, and afterwards said Sonntag listed her for sale with one E. T. Conrad and also asked your orator to try to find a purchaser for said boat, and the said Sonntdag amended said contract by the substitution of Lot 3 for Lot 2 of Block 42, writing said amendment himself upon the top of said contract, and your orator says that said pretended defense that said contract is not the contract of the Sonntag Investment Company is false and fraudulent and ought not to be entertained by this court.

(6) Your orator further shows unto your Honor that said yacht has never been in his possession since he delivered it to Mr. Miller upon receiving said contract; that it was used constantly by said Sonntag Investment Company until they broke the engine, broke the rudder and finally broke the clutch. It was then taken to Mr. Root's boatyard in Daytona by Mr Sonntag's order and the rigging taken off, the mast taken out, the bowsprit cut off and the carved woodwork in the cabin painted over, and these alterations were made after defendant company had had possession of said boat for six months. Since that time the machinery in said boat has been taken to pieces and

dispersed, said boat has been left unpainted and neglected and charges of some $100.00 or more are against her.

(7)   Your orator further shows unto your Honor that at the time said contract was made Mr. Sonntag explained to him that it would not be convenient to give a deed at that time because his company had to pay the Post Estate $500 before it could make a clear deed to said lots and that they desired six months before giving him a deed, but your orator has exercised possession of said lots ever since the sale of them to him by said contract and has paid the taxes thereon and your orator has since ascer- tained that said Sonntag Investment Company has a contract made with Helen W. Post, the owner in fee of said lots, on June 22nd, 1907, and in which Charles C. Post, the husband of said Helen, joins, by which the said Sonn- tag Investment Company can demand a deed to said lots to be made to the purchaser thereof upon payment to said Helen W. Post by said company of the sum of $100.00 per lot and interest of said $100 at 6% per annum from the date of said contract; and said contract is recognized as valid and is carried out by the legal representatives of the estate of said Helen W. Post and Chas. C. Post, both of whom are dead.

(8)   But now so it is may it please your Honor, that the said M. L. Waggoner combining and confederating with said W. L. Sonntag and other members of said Sonn- tag Investment Company, and contriving how to wrong and injure your orator in the premises, absolutely refuse to recognize said contract and to make a conveyance of said lots by deed to your orator to carry the same into effect and pretend that said Sonntag Investment Company did not purchase and use said yacht 'Crystal Wave', and did not make said contract or authorize or ratify the same, whereas your orator charges the contrary thereof to be

true. All of which actings, doings and pretences of the defendant's officers and agents are contrary to equity and good conscience, and tend to the manifest wrong, injury and oppression of your orator in the premises.

For as much therefore as your orator is without remedy in the premises except in a court of equity, your orator. prays: that the Sonntag Investment Company be required to make full and direct answer to this bill, but not under oath, an answer under oath being expressly waived; that the said defendant be required to specifically perform the said agreement entered into with your orator as aforesaid and to procure and deliver to your orator a good and sufficient deed of said described premises; and that your orator may have such other and further relief as equity may require and to this court shall seem meet."

To this bill the defendant filed a demurrer that was overruled by the court, whereupon the defendant answered as follows:

"The defendant the Sonntag Investment Company, a corporation duly incorporated under the laws of the State of Indiana by Stewart & Bly its solicitors, not waiving the many imperfections and defects of said bill, for answer thereto denies the allegation in the bill that on the 11th day of June, 1908, that they were seized or pretended to be seized in fee simple of Lots Two and Three, Block Forty-five, and Lots Two, Four and Six of Block Forty-two, according to the map of East Daytona, as alleged and set forth in said bill, and say that they are not now, nor never have been seized or possessed of the title to said property, and have been and were only agents of the Post Estate.

This defendant further denies that it or anyone authorized or with power to act ever entered into a written agreement with D. D. Beekman, complainant, by which this defendant sold or pretended to sell said lots to the

said Beekman, for the sum of One Dollar, and denies that ever One Dollar or any other amount was paid to the Sonntag Investment Company for said lots by the said D. D. Beekman.

This defendant further denies that it ever by itself or by any one authorized to act for it, agreed to purchase the 'Crystal Wave.'

This defendant further answering says that at the time of the pretended agreement and signing of it by A. I. Miller, resident agent, that he was not the agent of the Sonntag Investment Company, nor was he officer of said company, nor did he have any power of attorney to act for it, and was otherwise mentally insane and incompetent to contract for these defendants or any one else, as this defendant is informed and believes, and charges to be true.

This defendant further answering says that it never at any time authorized or appointed the said A. I. Miller to sign any contracts of the said company, and that the execution of any contract of the Sonntag Investment Company by him, was without authority and null and void.

This defendant further answering says that the acknowledgment by the said A. I. Miller as resident agent of this defendant was without authority and null and void, and that the recording of said agreement of the 20th day of August, 1908, in Book 45 of Deeds at page 486, of the records of Volusia County, Florida, was absolutely null and void and without force or effect, and without authority from this defendant or any of its legally authorized agents, president or board of directors.

For further answer defendant denies that within a few days after execution of said agreement, the said D. D. Beekman delivered said yacht 'Crystal Wave,' to the Sonntag Investment Company.

The defendant further denies that it has used the same as its own property.

This defendant denies that it has had said yacht altered from an auxiliary yacht to a launch.

This defendant further answering as to whether or not the complainant would have given this defendant a bill of sale of said yacht had they required it as set forth in said bill has no knowledge as to what the complainant would have done as they did not buy or purchase said 'Crystal Wave' and had no use or desire for said yacht or a bill of sale.

As to whether or not the complainant was informed by the custom authorities that said yacht being under twenty tons measurement had been dropped from registry and no bill of sale was necessary, but that the title to her would pass by possession and delivery as in case of other personal property, this defendant has no knowledge or information save and except that set forth in the bill, and therefore denies the same.

This defendant denies that such information as therein set forth was communicated to the agents and officers of this defendant, and denies that it had anything to do with said bill of sale.

This defendant for further answer denies that in October, 1908, one W. L. Sonntag, the treasurer and at that time the local manager of said company at Seabreeze, Florida, explained to the complainant that a mistake had been made in one of the lots sold and wrote on the top of said contract 'Lot No. 3B No. 42 to be substituted for Lot No. 2B No. 42' and that complainant accepted such amendment of said contract.

The defendant further denies that complainant complied with his part of the contract by delivering to said defendant the said yacht 'Crystal Wave,' and denies that

the said 'Crystal Wave' was ever delivered to this defendant.

Defendant admits that it refuses to make a conveyance by deed of Lots two and three in Block forty-five, and Lots two, four and six in Block forty-two, East Daytona.

Defendant admits that A. I. Miller who signed said contract never had any authority to sign the same and that it is so c'aimed by this defendant.

This defendant has no knowledge or information as to whether or not the said Miller had a sign on the office of the Sonntag Investment Company's office at Seabreeze, Florida, stating that he was its resident agent, as to whether or not said sign was there or not this defendant says that A. I. Miller was not authorized and could not sign any contract for real estate, and that any contract signed by him was null and void, and that it was impossible under the laws of the State of Florida for the said A. I. Miller to sign and seal and deliver a written contract for the sale of real estate for said company; that said Miller had no seal of said company, nor authority to use one.

This defendant asserts that the Sonntag Investment Company did not sign seal and deliver in the presence of two witnesses a contract for the sale of said real estate, nor did the said A I Miller sign, seal and deliver said contract as required by law, even though he should have had authority

This defendant further answering says that it denies that at the time said agreement was under consideration Mr. Miller, Mr. W. L. Sonntag, Mr. M. L. Waggoner and Mr. D. D. Beekman were together at the office of the Sonntag Investment Company at Seabreeze, and denies that it was decided to take the 'Crystal Wave' in trade for said lots; and this defendant denies that Mr. Sonntag told Mr.

Miller to make out the contract, in Mr. Beekman's presence, or any one else's presence; this defendant denies that Mr. Sonntag told Mr. Miller 'You have a power of attorney and can fix this up with the Doctor tomorrow.'

This defendant denies that by reason of said language the complainant was led to believe that said Miller had full authority in the premises and accepted the contract set up in the bill and delivered said yacht to said Miller as the resident agent of said defendant.

This defendant has no knowledge as to whether or not the said Sonntag, Wagner, Miller and others took a trip on said yacht to St. Augustine, and used the said boat as the property of said company until the fall of 1908, when they took her to Root's boatyard at Daytona and had her materially altered and changed in many respects, and therefore denies said allegations set forth in said bill.

This defendant says that it has no knowledge as to whether or not Sonntag listed for sale 'Crystal Wave' with one E. T. Conrad, and also asked D. D. Beekman to find a purchaser for said boat, and this defendant therefore denies the same.

This defendant has no knowledge or information as to whether said Sonntag amended said contract by the substitution of Lot three for Lot two of Block Forty-two, writing said amendment himself on the top of said contract, and therefore denies the same.

This defendant further answering says that the said contract is not the contract of the Sonntag Investment Company.

This defendant further answering denies that said yacht has never been in the possession of complainant since his delivery to Mr. Miller upon receiving said contract.

This defendant denies that it has been used constantly by said Sonntag Investment Company until they broke the

engine, broke the rudder and finally broke the clutch, and
this defendant denies that it broke the engine, rudder or
clutch.

This defendant denies that said boat was taken to Mr.
Root's boatyard in Daytona by this defendant or by Mr.
Sonntag's order and the rigging taken off, the mast taken
out, the bowsprit cut off and the carved woodwork in the
cabin painted over, and denies that these alterations were
made after defendant company had had possession of said
boat for six months. This defendant denies that it had
custody, charge or control of said boat.

This defendant further answering says that it denies
any ownership, control or responsibility for said boat and
so notified the said complainant.

The defendant further answering says that this defend-
ant has denied any ownership, control or responsibility
for said boat.

This defendant further denies that at the time said pre-
tended contract was made Mr. Sonntag explained to com-
plainant that it would not be convenient to give a deed at
that time because his company had to pay the Post Estate
$500.00 before it could make a clear deed to said lots, and
that they desired six months time before giving him a deed;
this defendant further answering denies that the com-
plainant had exercised possession of said lots ever since
the sale of them to him by said contract, but on the con-
trary says that the title to said lots as well as the posses-
sion of the same has never been changed, and has remained
in the name of Ada W. Powers, the executrix of Helen W.
Post, estate, and in her possession.

This defendant further answering denies that the said
M. L. Waggoner combining and confederating with W. L.
Sonntag and other members of the Sonntag Investment
Company has contrived to injure and wrong complain-

ant; this defendant admits that it has refused to recognize said contract and to make a conveyance of said lots by deed, because the said contract is not the contract of this defendant, and this title to the said property.

This defendant admits that it claims it did not purchase and use the yacht 'Crystal Wave' and did not make said contract authorizing or ratifying the same."

A voluminous amount of testimony was taken and reported by a master duly appointed for that purpose, and upon the pleadings and proofs so submitted at the final hearing the court below rendered a final decree adjudging the equities of the case to be with the defendant, denying the relief sought, and dismissing the complainant's bill. This decree the complainant brings here for review by appeal.

TAYLOR, J. (*after stating the facts.*)—The court below erred in the rendition of the decree appealed from. The complainant by his proofs, practically without contradiction on all essential questions, has fully sustained all of the material averments of his bill. The defense urged by the defendant is: (1) That it does not own the lots of land in question, the title thereto being in the estate of Helen W. Post, deceased, and that it cannot, therefore convey the same as it is sought to be coerced by the bill to do. (2) That it never contracted, either itself or by any authorized agent, with the complainant for the sale and conveyance of said lots as alleged.

As to the first of these defenses the proofs without contradiction show that while the legal title to the lots in question is in the estate of Helen W. Post, deceased, the defendant has a contract with her whereby the lots in question will be conveyed either to the defendant or to anyone to whom it might direct the title to be made upon the

payment to the said Helen W. Post or to her executor of the sum of $100.00 per lot. Helen W. Post left a will in which she made express provision for the carrying out by her executor of the terms of this contract with the defendant—so that all that the defendant has to do in order to procure a title to the complainant for said lots is to pay to the executor of the last will of Helen W. Post the total sum of $500.00, or the sum of $100.00 for each of said five lots contracted to be conveyed to the complainant.

As to the second of the defences urged, the proofs show that the contract sought to be enforced for the sale and conveyance of the five lots made by the defendant, a corporation, with the complainant, was executed for the corporation at Seabreeze, in Volusia County, Florida, by one A. I. Miller, as resident agent. The defendant urges that A. I. Miller had no authority to bind the corporation by executing for it any such contract. That no one had any such authority except the president of the corporation. The proofs show without contradiction that the defendant is a corporation incorporated under the laws of another State, and that its home office is in a distant city of such other State, where its president resides. That it has also an office in the locality of the lots in question in Volusia County, Florida, over the entrance to which, at the time the contract in question was made, it kept the following sign: "Sonntag Investment Company, A. I. Miller, Resident Agent." That at the time the contract was made W. L. Sonntag, who was a director of the company, was its Secretary and Treasurer and General Manager, and that M. L. Waggoner was another director. That these two were personally present and bought from the complainant his yacht agreeing to take her in full payment for the said five lots of land; that he delivered said yacht to Sonntag, who took possession of her and used her as his

VOL. 67, JANUARY TERM, 1914.        307

Beekman v. Sonntag Invest. Co.—Opinion of Court.

company's own in making various excursions in and about the business of said company in selling land lying on or near navigable waters, for several months, and in the meantime had various alterations made in her. That on the day said trade was made the said Sonntag in the presence of said Waggoner told the complainant that A. I. Miller had a power of attorney to act for the company and that said Miller would the next day embody the terms of their trade for said yacht and lots in a written contract, and that the contract in question was so signed by Miller as resident agent for said company. Besides this the proofs further show without contradiction that this complainant bought other lots from the defendant company for cash partly and partly on short time, lots that also belonged to the Post Estate, and that he bought them through this same A. I. Miller as Resident Agent for the defendant company who gave him a contract for title to same, executed by him as resident agent, exactly like the contract in question, and that upon the payment by him of the purchase price in money he received title to the lots so purchased from the defendant without any question or demur as to Miller's authority either to sell the lots or to bind the company by contract for title thereto. The proofs also showed that other parties dealt with this company through Miller as resident agent for the purchase of lots of the Post Estate in the same locality, receiving from him contracts for title executed by him as resident agent for the company, and that titles were made pursuant to said contracts without question or objection as to Miller's authority so to act for and bind the company. But besides all this the proofs show that after the contract in question was executed and delivered to the complainant, W. L. Sonntag, Secretary and Treasurer and General Manager of the defendant company in the presence of M. L. Wag-

goner, another director of the company, upon being shown the said contract discovered that a mistake had been made therein in giving the number of one of the lots therein, and that he with the consent of the complainant wrote a memorandum on the margin of said contract, designed to correct said error therein, by giving in said memorandum the correct number of said lot to be substituted for the lot incorrectly described. This amounted to a ratification of said contract by the defendant company through its Secretary and Treasurer and General Manager, and made it his contract as such Secretaray, &c., as though he had himself as such executed it in the first instance. We find in the record a resolution adopted by the defendant compny's board of directors on June 22nd, 1907, to the effect that in case of the absence or disability of the president of said company it shall be the duty of the Secretary and Treasurer to sign and execute all papers in his stead. The proofs show that the president was absent from Florida when this contract was made, and that Sonntag, its Secretary and Treasurer, was present on the ground and that he as such virtually and in fact made the contract for the company. The defendant company was here doing business as a real estate dealer on the Atlantic coast in Volusia County, and along the adjacent river Halifax. Its agents in charge of its business there desired a yacht as a suitable and convenient vehicle in carrying forward its business and bought the complainant's yacht agreeing to convey to him therefor the five lots in question. He has fully performed his part of said contract by delivering possession of said yacht, and is now entitled to a good title to said five lots of land in exchange therefor; and the defendant company is now estopped from repudiating said contract made for it by A. I. Miller as its resident agent, after holding him out as being authorized to make

such contracts by recognizing and carrying out without objection similar contracts made by him for the company in the same capacity with the complainant and with others besides. We think the defendant company is fully bound by the contract in question. If the vendor is in a situation to obtain title, is in such situation that it is only necessary, for instance, to demand a deed after having paid the purchase money at an administrator's sale of the subject of the contract of sale between him and the purchaser, or to do like acts clearly within his power and thus acquire a title, a court of equity will retain the bill, will require him to perform such acts, and will thereupon decree performance of the contract. Knox v. Spratt, 19 Fla. 817. The acts of an agent, performed within the scope of his real or apparent authority, are binding upon his principal. The public have a right to rely upon an agent's apparent authority, and are not bound to enquire as to his special powers unless the circumstances are such as to put them upon inquiry. Indian River State Bank v. Hartford Fire Ins. Co., 46 Fla. 283, 35 South. Rep. 228; Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947; Aetna Ins. Co. v. Holmes, 59 Fla. 116, 52 South. Rep. 801. Parol authority is sufficient to authorize an agent to execute a contract for the sale of real estate, Hopper v. McAllum, 87 Miss. 441, 40 South. Rep. 2; Ledbetter v. Walker, 31 Ala. 175; Goff v. Ramsey, 19 Minn. 44; Doty v. Wilder, 15 Ill. 407; Jackson v. Murray, 5 T. B. Monroe (Ky.) 184, 17 Am. Dec. 53, and numerous authorities cited in the notes to that case; Yerby v. Grigsby, 9 Leigh (Va.) 387; Doughaday v. Crowell, 3 Stockton's Chy. (N. J.) 201; McWhorter v. MacMahan, 10 Paige's Chy. (N. Y.) 386.

The decree appealed from is hereby reversed and the cause remanded to the court below with directions for

the entry of a decree in favor of the appellant according to the prayer of his bill, and requiring the defendant within a short time to be fixed by the court to procure a good title to be executed by the executor of the estate of Helen W. Post, deceased, conveying the lots in question directly to the complainant, by the defendant paying to said executor the sum of one hundred dollars for each of said five lots. The costs to be taxed against the defendant appellee.

SHACKLFEORD, C. J., AND COCKRELL, HOCKER AND WHITFIELD, J. J., concur.