DESSIE PHILLIPS

*v.*

RALPH ROGERS *and* PANSY ROGERS

(No. 13299)

Submitted September 26, 1973. Decided December 4, 1973.

*Jack Zegeer* for appellant.

*Morton I. Taber* for appellees.

NEELY, JUSTICE:

This is an appeal from a final order of the Circuit Court of Clay County, West Virginia, which granted specific performance on a contract dated July 8, 1968 and ordered the plaintiff below, appellant here, to execute and deliver a proper recordable deed conveying title to a farm in Clay County. This action was brought by the appellant as an action for unlawful detainer and damages, and the appellees answered by denying the allegations and asserting a counter-claim demanding specific performance.

In August 1967, the appellees, Mr. and Mrs. Ralph Rogers, were residents of Cuyahoga Falls, Ohio. Ralph Rogers was an employee of the Ford Motor Company with twelve and one-quarter years seniority at a substantial wage rate. Both Mr. and Mrs. Rogers are natives of Clay County, West Virginia; however, they owned their home in Ohio. The appellant, Mrs. Dessie Phillips, was a schoolteacher who was employed in the State of Florida during the school year and spent the remaining portion of the year in Kanawha County, West Virginia. The appellant was also the owner of a farm at Ovapa, Clay County, West Virginia, which she received from her husband by will. Both the appellant and the appellees are related through marriage and the farm which is the subject of this litigation was at one time owned by a common ancestor.

Sometime during August 1967, while attending the funeral of a common relative, the appellant initiated a conversation concerning the sale of the farm to the

appellees. On July 8, 1968, both appellant and appellees executed an agreement which had been drafted by the appellant providing what purported to be an option for the purchase of the "L. S. Phillips farm at Ovapa, W.Va." Thereafter, on October 24, 1968, the appellees entered into a contract to sell their home in Ohio, and prepared to return to West Virginia, and on March 1, 1969 the appellees began residing on the farm. Although before the appellees sold their house in Ohio, the appellant's daughter telephoned them to tell them that the appellant had decided not to sell the farm, the appellant thereafter, contrary to her daughter's statement, reassured the appellees that she would sell the farm to them. By letters dated November 7, 1968 and December 11, 1968 the appellant confirmed her desire and intention to sell the farm to appellees and urged them to take possession.

The handwritten instrument dated July 8, 1968 on which the appellees relied in their counter-claim for specific performance read as follows:

"July 8, 1968, we, the undersigned, wish to pay one hundred dollars ($100.00) for an option to buy the L. S. Phillips farm at Ovapa, West Virginia.

"In case the farm for any reason cannot be sold to us the one hundred dollars ($100.00) will be returned.

"Said farm is to be six thousand dollars ($6000.00) cash. Remainder to be paid when deed is made.

"/s/ Dessie Phillips

Ralph Rogers

Pansy Rogers."

The appellant makes three assignments of error. The first is that the circuit court erred in ruling that the July 8, 1968 instrument did not violate the rule against perpetuities. Secondly the appellant contends that the

circuit court erred in ruling that the July 8, 1968 instrument was not too vague and ambiguous to be enforced, and lastly the appellant maintains that the circuit court erred in not finding that the appellant had a right for any reason to refuse to sell the property to the Rogers.

The circuit court, in its opinion, cogently reasoned as follows:

> "It appears to the Court that the agreement between the parties is nothing more than a continuing offer upon the part of the plaintiff to sell the land to the defendants, and if the option to buy was exercised by the defendants within a reasonable time and prior to any revocation thereof by the plaintiff it is binding and enforcible [sic]. It will be observed that the defendants, acting through their attorney and agent, Mr. Henry McLane, by a letter under date of February 23, 1970, to the plaintiff, elected to exercise their option to buy and the plaintiff was fully informed thereof. Thereafter, on March 1, 1970, the plaintiff by letter to the defendants attempted to revoke the option, but at that time the option became executory contract of sale and was binding upon both the plaintiff and the defendants, and the plaintiff, after having been notified of the election of the defendants to exercise the option, could not legally revoke the same. Thus the control of sale is enforcable [sic] by both plaintiff and defendants, and the Court so holds."

It is not necessary for this Court to consider appellant's assignment of error concerning the rule against perpetuities. The circuit court found as a mixed question of fact and law, in light of the other communications between the parties, that the instrument which the parties characterized as an option was also a continuing offer to sell the property, the acceptance of which must be exercised within a reasonable time, and that that offer was accepted before it was revoked. Accordingly the case reduces itself to a simple problem of offer and acceptance, and the issue of the nature and extent of a

putative option is not fairly raised. Had the offer to sell been revoked before it were accepted, an issue concerning the nature and extent of the purported option would have been raised.

While it is obvious that the July 8, 1968 agreement was poorly drafted, as was noted by the circuit judge in his opinion, mere lack of art in drafting a contract does not necessarily make the contract void for vagueness. In the case of *Fayette-Kanawha Coal Company v. Lake & Export Coal Corporation,* 91 W.Va. 132, 112 S.E. 222, 23 A.L.R. 565 (1922) this Court affirmed the principle that regardless of poor draftsmanship, courts will attempt to give effect to the intent of the parties. In *Fayette-Kanawha* we said:

> "It must be borne in mind that when the parties entered into this contract they intended to accomplish some purpose by it, and this court will not give to it a construction which will render it void if it can reasonably be interpreted so as to give it effect."

In this case the circuit judge specifically found that both appellant and appellees intended to accomplish something, and this Court notes that the appellees relied rather substantially to their detriment upon what they believed to be an option. The circuit court found that the overall intent of the parties could be ascertained, and that effect could be given to this intent by ordering specific performance.

From the circuit court's evaluation of all the attendant circumstances, the court ruled that the language in the July 8, 1968 instrument which said: "In case the farm for any reason cannot be sold to us the one hundred dollars * * * will be returned" did not mean that the appellant could refuse to sell the farm for any reason whatsoever. To construe that language to mean that the appellant was in no way bound to perform her part of the bargain, would be to deny that the parties had any agreement at all, which is directly contradicted by the

appellant's letters to the appellees reaffirming her intention to sell the property, and the appellees' reliance upon the appellant's assertions in selling their Ohio residence and moving to West Virginia. Obviously there are factors beyond the control of either party which would preclude passage of clear title to the farm, the most outstanding of which would be the absence of clear title in the appellant, and the circuit court properly interpreted the last quoted sentence to refer to these situations beyond the control of either party. Therefore, this Court holds that the circuit court did not err in finding that the appellant could not refuse to sell for reasons over which she had complete control.

Accordingly the judgment of the Circuit Court of Clay County is affirmed.

*Affirmed.*