371 S.E.2d 591

**Douglas B. HUNT**

v.

**Wanda G. SHAMBLIN, "Speedy" Shamblin, her husband, Robert O. Dalton, Katheryn A. Dalton, his wife, James R. Dalton, Myrtle Dye Wall, Ruth Hershberger, W.E. Hershberger, her husband, James Dye, Constance Dye, his wife, Virginia Santee, Alfred Santee, her husband, and Hoyt W. Dye, as Executor of the Estate of James H. Dye.**

No. 17504.

Supreme Court of Appeals of West Virginia.

July 5, 1988.

Michael J. DelGuidice, Charleston, for Hunt.

Michele Grinberg, Charleston, for Shamblin et al.

**664**

PER CURIAM:

This is an appeal by Douglas B. Hunt from an order entered by the Circuit Court of Kanawha County on June 18, 1986. That order denied the appellant specific performance of a real estate purchase agreement which he had entered into with the heirs of James H. Dye. On appeal the appellant claims that he is entitled to specific performance, and he makes a number of assignments of errors relating to the circuit court's reasons for denying specific performance. After examining the record this Court agrees with the appellant's assertion that he is entitled to specific performance and reverses the decision of the Circuit Court of Kanawha County.

James H. Dye owned a tract of land consisting of approximately thirty-five and one-half acres located in Clendenin, West Virginia. He died on September 3, 1974. In his will he appointed Hoyt W. Dye executor of his estate and directed that he sell the Clendenin land and distribute the proceeds to the named heirs.

Hoyt W. Dye, although appointed executor under the will, failed to sell the land as directed. Instead, he closed the estate. He was subsequently discharged as executor on April 27, 1976.

On October 13, 1981, after James H. Dye's estate had been closed, the heirs, who had decided to sell the Clendenin property entered into a written multiple listing agreement with Shamblin Realty Company, authorizing Shamblin to sell the real estate. The appellant, Douglas B. Hunt, learned that the property was available, and on December 26, 1981, offered to purchase it for $10,000.00. He made the offer on a standard multiple listing service form prepared by Shamblin Realty. The document made any contract contingent upon:

"1. Favorable survey

2. Favorable financing

3. Valid and suitable right of way for reasonable access by roadway."

The heirs and/or their successors or agents accepted the offer, and a written acceptance was returned to the appellant on February 12, 1982.[1]

In January, 1982, the property was surveyed by Wallace J. Board, and, according to the appellant, the survey results were accepted by him. Also, a preliminary examination of questions relating to the title of the Dye heirs was made. As a result of that examination, some question arose as to whether Hoyt W. Dye, who had been the executor of the will of James H. Dye, should join in any conveyance. To resolve the problem, attorneys for the Dye heirs and the appellant agreed in June, 1982, that Mr. Dye should be reappointed and join in the conveyance of the property. Such reappointment was subsequently arranged.

Also during the summer of 1982, two deeds were circulated among the sellers for their execution. Counsel for the appellant subsequently refused to accept the deeds because of improper executions and/or acknowledgements.

By letter dated September 8, 1982, the attorney for the Dye heirs declared that, because of the delay of the appellant in closing the transaction, they were unilaterally terminating the contract. They also indicated that they would seek to sell the property to another party. In response to this letter, the appellant, on September 15, 1982, indicated that he was willing to perform his obligations under the contract upon the tender of a sufficient deed by the Dye heirs.

In spite of the appellant's response, Hoyt W. Dye, as executor of the estate of James H. Dye, and other parties, on September 22, 1982, executed a deed transferring the real estate to Wanda G. Shamblin, the owner of Shamblin Realty, for $10,100.00. That deed was subsequently recorded in the office of the Clerk of the County Com-

---

1. It appears that the acceptance was signed by Alfred L. Santee (apparently the spouse of Virginia Santee, an heir), Virginia Santee herself; James L. Dye, an heir, and Constance Dye (apparently the spouse of James L. Dye); Myrtle Dye Wall, an heir; and Edith D. Dalton, the fourth and last heir, by Robert O. Dalton, attorney in fact. The appellees argue that Edith D. Dalton had died prior to the execution of the agreement. They also argue that her heirs were Robert O. Dalton and James Dalton, and that James Dalton did not sign the agreement.

mission of Kanawha County, West Virginia.

After the conveyance, the appellant instituted the present action in the Circuit Court of Kanawha County praying that the deed to Wanda G. Shamblin be declared null and void and praying that the court grant specific performance of his real estate purchase agreement. He also prayed that he be awarded attorney fees and costs.

In answer to the appellant's complaint, the Dye heirs, among other things, alleged that under the last will and testament of James H. Dye, legal title to the property was vested in the executor of the estate and that they, as heirs, did not have legal title to the property. They inferred that since they had no legal title to the property, they could not properly contract to sell the property.

The case was tried before the Circuit Court of Kanawha County, acting with an advisory jury, in November, 1985. At the conclusion of the trial, the court took the case under consideration. Several months later, an "off the record" meeting was held, at which time the appellees and the court raised several legal issues. After considering the new issues, the court ruled that the agreement between the heirs and the appellant was void as a matter of law because the heirs did not hold legal title to the property; instead title was vested in Hoyt W. Dye, as executor of the estate of James H. Dye. The court also indicated that there was no agreement between the appellant and Hoyt W. Dye in writing, and thus there was no compliance with the Statute of Frauds. Finally, the court indicated that even if the heirs had had title to the property, because of the vague conditions in the agreement relating to survey and other matter, there was no mutuality of obligation under the agreement. It was thus void as a matter of law. The court subsequently denied the appellant the specific performance which he sought in his complaint.

In the present proceeding the parties discuss at length the question of whether legal title to the property in question, at the time of the appellant's contract with the heirs, was vested in Hoyt W. Dye, as executor under the will, or whether it was vested in the heirs. The appellees argue that legal title was vested in the executor, and that the heirs, since they lacked legal title, could not enter into a specifically enforceable contract.

The appellees' argument has its basis in the fact that it is generally recognized that when a will directs that land be sold by an executor and the proceeds be paid to beneficiaries, an equitable conversion of title to the property occurs, and the party directed to sell the land is deemed to have legal title, and the beneficiaries are deemed to have equitable title. *See Brown v. Millers' Executors*, 45 W.Va. 211, 31 S.E. 956 (1898).

■ Under this rule after the death of James H. Dye, his executor, Hoyt W. Dye, did have legal title to the property, and the heirs had only equitable title. However, the second aspect of the appellees' argument, that the heirs, since they lacked legal title, could not enter into a specifically enforceable contract, is not supported by authority. On the contrary, it is generally recognized that the holders of equitable title, as well as the holders of legal title, may enter into specifically enforceable contracts. The rule is stated in 71 Am.Jur.2d *Specific Performance* § 125 (1973):

> If the vendor in the contract which the plaintiff seeks to enforce is the equitable owner or has equitable title, and has the right to call for legal title, he may be required specifically to perform at the suit of his vendee.... Under these circumstances it is generally held that specific performance will be enforced either against the vendor in the contract with the plaintiff alone, if the purchaser is willing to accept such title as the defendant can convey, with, in a proper case, compensation for deficiency in the performance, or by joining the holder of the legal title as party defendant.

*See, Beekman v. Sonntag Inv. Co.*, 67 Fla. 293, 64 So. 948 (1914); *Waggoner v. Saether*, 267 Ill. 32, 107 N.E. 859 (1915).

Essentially the same rule is expressed in *Milkes v. Smith,* 91 Cal.App. 79, 80, 204 P.2d 419, 420 (1949), as follows:

It is well-settled that where a vendor has no title or interest in the land he contracts to convey he cannot be required specifically to perform. The decree would be of no avail for equity will not compel him to obtain title ... Where the vendor is, however, the equitable owner of the property and has the right to call for the legal title, he may be compelled by the vendee to specifically perform the contract of sale. *Miller v. Dyer,* 20 Cal.2d 526, 529, 127 P.2d 901, 141 A.L.R. 1428 ... *Miedema v. Wormhoudt,* 288 Ill. 537, 123 N.E. 596; *Cutler v. Lovinger,* 212 Mich. 272, 180 N.W. 462; Pomeroy, Specific Performance of Contracts, 3d Ed., p. 667; Annotation 141 A.L.R. 1433.

It is likewise well-settled that if a vendor has any interest in the property he has contracted to convey, the vendee at his option may enforce the contract with respect to whatever interest the vendor possesses, and may also receive compensation for the deficiency in performance. *Miller v. Dyer,* 20 Cal.2d 526, 529, 127 P.2d 901, 141 A.L.R. 1428 [vendor equitable owner of the property] ... *Farnum v. Clarke,* 148 Cal. 610, 617–618, 84 P. 166, 169 [vendor had an "inchoate equitable right"] ... Pomeroy, Specific Performance of Contracts, 3d Ed. p. 900, et seq.; Rest. Contracts, sec. 365; 49 Am.Jur. secs. 102, 105, pp. 119, 123; Annotation 148 A.L.R. 563 ...

■ In the case presently being considered the Dye heirs, at least, had equitable title to the property in question. Under the authority cited, contrary to the appellees' argument, their contract was specifically enforceable both against them and, with proper pleading, against the holder of legal title.[2]

■ On appeal the appellees also claim that their contract was illusory and not binding in that it made the appellant's obligations contingent upon: "1. Favorable survey 2. Favorable financing 3. Valid and suitable right of way for reasonable access by roadway." They, in effect, argue that these contingency clauses would have allowed the appellant to withdraw from the purported contract at his whim.

■ In a number of cases this Court has recognized that when parties enter into a contract they attempt to accomplish some purpose. With this in mind, the Court has indicated that it will, if reasonably possible, apply that interpretation to the language of the parties which gives it effect rather than the interpretation which renders the contract void. As stated in syllabus point 1 of *Phillips v. Rogers,* 157 W.Va. 194, 200 S.E.2d 676 (1973):

It is presumed that parties enter into a contract with the intention of accomplishing some purpose by it; and, therefore, courts will not give to the contract a construction which will render it void if it can reasonably be interpreted in such a way as to give it effect.

*See also Fayette–Kanawha Coal Co. v. Lake & Export Coal Corp.,* 91 W.Va. 132, 112 S.E. 222, 23 A.L.R. 565 (1922).

Although this Court has not construed a contract containing language precisely like that in the present case, the Court in *Manning v. Bleifus,* 166 W.Va. 131, 272 S.E.2d 821 (1980), examined a contract which provided that the purchaser's obligation was "subject to the approval of financing." The Court noted that a majority of jurisdictions have interpreted "subject to financing" clauses as being enforceable conditions precedent to a real estate contract. Applying the rule that a contract will not be construed to render it void if it can reasonably be interpreted in such a way as to give it effect, the Court stated that although the phrase "subject to the approv-

---

**2.** If, in fact, Edith D. Dalton, was dead at the time of the execution of the agreement and Robert O. Dalton lacked authority to bind her interest, as is suggested by the appellees (see Note 1, *supra*), her interest would not, of course, be bound by this rule, but the Court does not believe that the failure to join her interest in the contract would relieve any party who did actually sign. Rather clearly *Milkes v. Smith, supra,* suggests that a holder of a part interest may be required to specifically perform.

al of financing" is far from specific, it is not so indefinite or devoid of meaning as to void the contract. The Court, in effect, reasoned that the clause could be construed as meaning that the buyer would make a reasonable good faith effort to obtain financing for the purchase of the property. The Court concluded that when the clause was so construed it was sufficiently definite to render the contract specifically enforceable.

In the case presently under consideration, this Court believes that the clause "favorable financing," when construed in accordance with the principles in the *Manning* case, indicates that the parties reasonably understood that the buyer would make a good faith and reasonable effort to obtain financing for the purchase of the property in question at an interest rate then reasonable, given the circumstances of the financial markets, and that the buyer's obligation was contingent upon the obtaining of such financing. The Court believes that this clause, when so reasonably construed, imposed an obligation upon the appellant to seek financing and did not permit him to withdraw from his undertaking at will, but permitted him to do so only if reasonable financing was not available.

Likewise, this Court believes that the "survey" and "access" provisions are susceptible to reasonable interpretations which impose obligations on the appellant. Under the rule that courts should not impose a construction on contract language which renders it void if it can reasonably be interpreted to make it valid, the interpretations placing obligations on the appellant should be applied. The common sense meaning of a "favorable survey" in a contract of this sort is that upon a professional survey the property to be transferred will be shown to contain substantially the same area and same dimensions as stipulated in the contract. The Court does not believe that this language authorized the appellant to withdraw from his undertaking at will. Rather, it imposed upon him the obligation to undertake a professional survey of the property and permitted him to withdraw only if the survey did not produce results in substantial conformity with the description in

the contract. The clause relating to access required the appellant to determine whether there was reasonable, legal access to the property by roadway.

The Court believes that under reasonable interpretations of the clauses in the contract, the appellant could not avoid his obligations at will or whim. For this reason the appellees' position with regard to mutuality, a position adopted by the trial court, is without merit.

Finally, the appellant argues that the trial court erred in charging him with court costs incurred in the trial of the matter. Our Rules of Civil Procedure stipulate that, in most situations, costs in a civil matter should be awarded to the prevailing party. Specifically, R.C.P. Rule 54(d) provides: "Except when express provision therefor is made either in a statute of this State or in these rules, costs shall be allowed as of course to the prevailing party...." In view of the fact that this Court believes that the appellant, Douglas B. Hunt, should have prevailed in this matter, and in view of the provision of R.C.P. Rule 54(d), this Court believes that the circuit court erred in awarding the appellees costs in this matter and that the appellant should have been awarded costs.

Because the Dye heirs entered into an enforceable contract with the appellant, and because under the law such a contract is specifically enforceable even if the Dye heirs had only equitable title to the property in question, this Court believes that the Circuit Court of Kanawha County erred in failing to award the appellant specific performance and in failing to declare the Shamblin deed void.

The judgment of the Circuit Court of Kanawha County is, therefore, reversed, and this case is remanded to the circuit court with directions that it declare the Shamblin deed void, that it grant the appellant specific performance of his contract with the Dye heirs, and that it award the appellant costs.

Reversed and remanded with directions.