7 F.3d 222
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Glenda Sue BREWER, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant &
Third Party Plaintiff-Appellee,
and
SAFECO INSURANCE COMPANY OF AMERICA; The Western
Pennsylvania Hospital, Defendants,
v.
Paul FRAVEL, Third Party Defendant.
 No. 92-2536.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: August 13, 1993.
Decided: September 16, 1993.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, District Judge. (CA-90-113-C)
 H. John Rogers, H. John Rogers & Associates, L.C., New Martinsville, West Virginia, for Appellant.
 Kenneth R. Miller, Susan Yurko, Furbee, Amos, Webb & Critchfield, Fairmont, West Virginia, for Appellees.
 N.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Glenda Sue Brewer appeals from the district court's order denying relief in her action challenging a structured settlement agreement concerning an insurance claim. Brewer claims that the district court committed reversible error by excluding the testimony of her expert witness and by granting judgment as a matter of law for Defendant. We find her claims lack merit; consequently, we affirm.[1]
 
 
 2
 During a three-car drag race in May 1984, Brewer, a passenger in one of the vehicles, suffered injuries as a result of a crash. The insurers of the two cars involved in the accident paid Brewer a total of $120,000. State Farm Automobile Insurance Co. ("State Farm") insured the third vehicle, which was not involved in the mishap, and entered a structured settlement agreement with Brewer. At the time, Brewer's uncle, Paul Fravel, was an insurance agent and he acted as her agent in negotiating the settlement agreement with State Farm.
 
 
 3
 Under the terms of the structured settlement, State Farm agreed to pay Brewer $575 per month for the rest of her life, starting in May 1985, plus periodic payments totalling $50,000. If Brewer died less than twenty years after the agreement was executed, State Farm agreed to continue monthly payments to Brewer's beneficiary or estate for the remainder of the twenty year period.
 
 
 4
 Brewer began receiving her monthly payments of $575 in May 1985. In December 1985, The Western Pennsylvania Hospital obtained a judgment against Brewer in Pennsylvania state court for failure to pay her hospital bills. Brewer's settlement payments were garnished and, pursuant to a Pennsylvania court order, State Farm began paying the monthly payments to the hospital in October 1986.
 
 
 5
 In October 1990, Brewer filed a complaint against State Farm, alleging tort and contract claims. Although it was not raised in the initial complaint, the key issue in the case involved a discrepancy in the settlement agreement. The agreement stated that Brewer would receive $575 per month for the rest of her life, guaranteed for twenty years, and that the guaranteed twenty-year benefit totaled $188,000. Mathematically, however, $575 monthly payments for twenty years equals $138,000. The district court held a pretrial conference disposing of all claims except whether the discrepancy in the contract entitled Brewer to an additional $50,000, either in lump sum or monthly payments. The court also refused to allow Brewer's expert witness, economist Dr. William N. Trumbull, to testify at the jury trial. At the close of Defendant's evidence, the district court granted Defendant's motion for judgment as a matter of law.
 
 I. Exclusion of Testimony
 
 6
 Brewer claims that the district court committed reversible error by excluding as irrelevant the testimony of her expert witness, Dr. Trumbull. Rule 402 of the Federal Rules of Evidence provides in part that "[e]vidence which is not relevant is not admissible." Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. An expert witness may testify if his testimony will help the fact finder "understand the evidence or ... determine a fact in issue." Fed. R. Evid. 702. The district court has broad discretion to determine whether evidence is relevant and whether an expert's testimony will help the fact finder understand the evidence or decide a fact in issue. United States v. Barsanti, 943 F.2d 428, 432 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3652 (U.S. 1992); United States v. Fernandez, 913 F.2d 148, 155 (4th Cir. 1990).
 
 
 7
 Brewer wanted Trumbull to testify that Defendant sought to mislead her by including a provision in the settlement agreement about the future value of the settlement.[2] However, the fraud claims were disposed of before the trial and Brewer did not appeal the dismissal of those claims. The only issue remaining for the trial concerned the discrepancy between the monthly payments of $575 and the $188,000 figure stated in the settlement agreement to equal twenty years of monthly payments. We find that the district court did not exceed its discretion by excluding Trumbull's testimony as irrelevant to this issue.
 
 II. Judgment as a Matter of Law
 
 8
 Brewer also claims that the district court erred by entering judgment as a matter of law for Defendant at the close of Defendant's evidence. This Court reviews judgments as a matter of law de novo to determine "whether, without weighing the evidence or considering the credibility of witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir. 1981)). This inquiry focuses on whether there was sufficient evidence for a jury to proceed to reach a verdict. Id.
 
 
 9
 Based on the $50,000 discrepancy in the settlement agreement between the monthly payments and the sum of twenty years of monthly payments, Brewer sought either recision of the contract or "specific performance."[3] West Virginia law discourages interpretation of contracts that will render them void; thus, if possible, the settlement agreement should be interpreted in such a way as to give it effect. Hunt v. Shamblin, 371 S.E.2d 591, 594 (W. Va. 1988) (quoting Phillips v. Rogers, 200 S.E.2d 676 (W. Va. 1973) (syllabus point 1)).
 
 
 10
 The district court found that the $50,000 discrepancy between the $575 monthly payments and the $188,000 stated to equal twenty years of monthly payments constituted an ambiguity. Generally, under West Virginia law, ambiguities in a contract must be construed against the party who drafted it. See Shamblin v. Nationwide Mut. Ins. Co., 332 S.E.2d 639, 642 (W. Va. 1985) (ambiguities in insurance policies construed against insurers). Where the ambiguity involves a computation error, as in this case, we find that the district court did not err by interpreting the ambiguity to reflect the parties' intent.
 
 
 11
 The discrepancy in this case constituted a mutual mistake. Under Corbin's rule for interpretation of computation errors in contracts, if the intent of the parties was for each payment to equal a certain amount, then the contract should be construed to reflect such figures, rather than the miscalculated sum of the payments. 3 Corbin on Contracts § 609, at 68 (1960). Thus, if the parties here intended monthly payments to equal $575, the contract should be construed to reflect that amount.
 
 
 12
 The evidence is clear that the parties intended the monthly payments to equal $575 and that, although the parties intended to guarantee those payments for twenty years, the specific sum of the total guaranteed payments was not a key element of the negotiations. Brewer argues that the district court erred by finding that she failed to make a sufficient showing that she relied on the $188,000 figure to her detriment.[4] During the trial, in response to very specific questions from her attorney, Brewer made conclusory statements that she relied on both the $575 figure and the $188,000 figure in the settlement agreement. In light of the overwhelming evidence that the monthly payment figure was the key number the parties focused upon in negotiations and Brewer's failure to demonstrate how she relied to her detriment on the $188,000 figure, the district court's conclusion that she failed to demonstrate detrimental reliance was not erroneous.
 
 
 13
 For these reasons, we affirm the district court's order granting judgment as a matter of law for Defendant.
 
 AFFIRMED
 
 
 [1]
 This Court previously granted Brewer's motion to waive her right to oral argument and for submission of the case on the record before the Court
 
 
 [2]
 Apparently, Brewer sought to argue that Defendant included an amount allegedly reflecting future value of the settlement, rather than the present value, to trick her into believing the settlement was worth more than it was
 
 
 [3]
 As the trial court noted, it is unclear whether Brewer sought specific performance in the form of a lump sum of $50,000 or in the form of higher monthly payments
 
 
 [4]
 Detrimental reliance is necessary in order to make a promise binding, see North Am. Royal Coal Co. v. Mountaineer Developers, Inc., 239 S.E.2d 673, 675 (W. Va. 1977), and to successfully assert equitable estoppel, American Hardware Mut. Ins. Co. v. BIM, Inc., 885 F.2d 132, 138 (4th Cir. 1985)